UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61880-cv-MIDDLEBROOKS/JOHNSON

FREDY D. OSORIO,

       Plaintiff,

v.

STATE FARM BANK, F.S.B.,

       Defendant / Counter-Plaintiff

v.

CLARA BETANCOURT

       Counter-Defendant

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S TCPA CLAIM

Defendant, State Farm Bank, F.S.B. ("State Farm Bank"), moves pursuant to Fed. R. Civ. P. 56 for final or partial summary judgment on the claim of Plaintiff, Fredy D. Osorio ("Osorio"). State Farm Bank adopts the following memorandum of law.

### INTRODUCTION

On August 23, 2011, Osorio filed a one-count complaint against State Farm Bank, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). [D.E. 1] Osorio alleges State Farm Bank made calls to his cellular telephone number with an automatic telephone dialing system ("autodialer") for non-emergency purposes and without consent, allegedly in violation of the TCPA, specifically, 47 U.S.C. § 227(b)(1)(A)(iii). (*Id.* at ¶¶ 6-8) The undisputed evidence establishes that the calls about which Osorio complains were actually made to Third-Party Defendant, Clara Betancourt ("Betancourt), with express consent and for the purpose of collecting a valid debt owed to State Farm Bank by Betancourt.

State Farm Bank has several complete defenses to Osorio's claim, requiring final summary judgment be entered for State Farm Bank.  First, State Farm Bank had express consent to call the number 754-244-8626 and, thus, there was no violation of the TCPA.  Second, Betancourt—not Osorio—was the called party and, therefore, it was only Betancourt who could provide consent and Osorio has no standing to bring his TCPA claim against State Farm Bank. Third, no charges for the calls in questions were incurred and, thus, there was no violation of the TCPA.  Fourth, State Farm Bank did not "make" the calls and, thus, it cannot be liable for the TCPA violations alleged.  In the alternative, State Farm Bank is entitled to partial summary judgment on Osorio's claim for treble damages as there is no evidence of a "willful and knowing" violation, and on Osorio's claim for injunctive relief as there is no on-going activity to enjoin and, in any event, he has an adequate damages remedy for any alleged TCPA violations.

### FACTUAL BACKGROUND

As set forth more fully in State Farm Bank's Consolidated Statement of Undisputed Material Facts, filed separately pursuant to S.D. Fla. L.R. 56.1(a), the material facts are as follows.[1]  In May 2007, Betancourt applied for a credit card from State Farm Bank, which application was approved and a credit card was issued to Betancourt. (CSUMF ¶ 7, 17) As reflected on her application, Betancourt provided State Farm Bank 754-244-8626 as her cell phone number. (*Id.* ¶ 16) This is the cell number at issue in Osorio's complaint. (*Id.* ¶ 2)

After receiving her first credit card statement, in June 2007, Betancourt mailed to State Farm Bank a change of address form. (*Id.* ¶ 19) On that form, Betancourt requested that State Farm Bank change its records to reflect her "work phone" at that point had changed to 754-244-

---

[1] State Farm Bank's CSUMF contains references to the record evidence in support of the material facts and reference herein is, for the most part, made only to the CSUMF.

8626 (the number Osorio claims is his cellular number) from the number she had provided on her application. (*Id.* ¶ 20) State Farm Bank changed its records accordingly. (*Id.* ¶ 21)

Betancourt called into State Farm Bank's customer service line to make two additional changes to her contact information. (*Id.* ¶ 22) On May 29, 2008, Betancourt requested State Farm Bank to update its records to reflect her home phone number had changed to 754-244-8626 (again, the number Osorio claims is his cellular number). (*Id.* ¶ 23) On September 29, 2010, Betancourt requested State Farm Bank update its records to reflect her home phone number had changed again, this time to 754-244-5645. (*Id.*) State Farm Bank updated its records accordingly on each of these dates. (*Id.*) When a customer provides State Farm Bank with a telephone number, that customer is expressly consenting to have State Farm Bank call the customer at that number concerning the customer's account with State Farm Bank. (*Id.* ¶ 25, 35, 37)

For several years, Betancourt paid at least the minimum payment due on her monthly credit card statements on a reasonably timely basis. (*Id.* ¶ 28) However, Betancourt failed to make any payment following her receipt of the statement with closing date October 26, 2010. (*Id.*) In light of Betancourt's account going into default, in November 2010, State Farm Bank referred the account to FMS, Inc. ("FMS"), a collection agency, to attempt to collect the debt on State Farm Bank's behalf. (*Id.* ¶ 29) FMS is an independent company providing debt collection services and is not affiliated with State Farm Bank or any other State Farm entity. (*Id.*)

In referring the account to FMS for collection, State Farm Bank provided FMS with Betancourt's home number (754-244-5645) and work number (754-244-8626) as reflected in its records at that time. (*Id.*) FMS made numerous calls to Betancourt on both of those numbers during the following six months. (*Id.* ¶ 30) FMS called 754-244-8626 on 327 occasions using an autodialer. (*Id.*) These calls began on November 29, 2010 and ended on May 31, 2011. (*Id.*)

For the most part, the calls made by FMS resulted in no answers or hang ups with no communication. However, a number of contacts were made with both female and male persons answering the calls, including those made to 754-244-8626.  On no occasion did any person answering the calls, when being asked if Betancourt was available, advise the caller that it was not Betancourt's number, the caller was calling a wrong number, or that the number called was to a cell phone not belonging to Betancourt.  To the contrary, on some of the calls, the answering person simply indicated Betancourt was not available.  This indicates that this was an appropriate number at which to reach Betancourt.  (*Id.* ¶ 32; Recording of Calls)[2]

Osorio asserts that he told the callers on two occasions simply to "stop calling," but he did not tell the callers it was not Betancourt's number.  (Osorio Depo. at 44-45)  State Farm Bank's records and the recordings of the calls do not reflect even that request, much less anyone advising that the number being called was for a cell phone that belonged to someone other than Betancourt. (CSUMF ¶ 32; Recordings of Calls) Certainly, Betancourt never advised State Farm in writing that 754-244-8626 was not her number or that she was revoking her consent to State Farm to call her at that number. (CSUMF ¶ 20-25)

After the filing of this lawsuit, State Farm Bank first learned that Osorio claimed 754-244-8626 was his exclusive cell phone number and it allegedly was not Betancourt's number as she had warranted and represented to State Farm Bank. (*Id.* ¶ 2, 39; Osorio Depo. at 49, 65-66) In fact, Osorio, Betancourt, and their 24-year-old son, John Fredy Betancourt Osorio, who lived together at all relevant times, share a cellular telephone service "family" plan with cellular service provided by MetroPCS. (CSUMF ¶ 3-5) This "family" plan has been in place since at least 2006 and cell service is provided for a flat monthly fee, that is, there is no charge for

---

[2] State Farm Bank is filing a motion for leave to file disks containing the audio recordings of the calls made to both numbers when contact was made.

minutes or the number of calls, regardless of the number or length of calls. (*Id.* ¶ 6) One of three cell numbers on the "family" plan is 754-244-8626 and another is 754-244-5645. (*Id.* ¶ 4)

## MEMORANDUM OF LAW

**I.  STATE FARM BANK IS ENTITLED TO SUMMARY JUDGMENT ON OSORIO'S TCPA CLAIM BECAUSE THERE WAS NO VIOLATION OF THE TCPA.**

The TCPA provision Osorio alleges State Farm Bank violated provides in relevant part:

> It shall be unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides for a private action for violation of this provision, with recovery being the greater of actual damages or $500 per violation (subject to being trebled for a willful and knowing violation). 47 U.S.C. § 227(b)(3).  Osorio is seeking an unwarranted financial windfall (much of the basis for which is self-generated)[3] given his common law wife, with whom he shares a home and a "family" cellular telephone service plan, provides one of the "family" cell numbers to State Farm Bank as her own in connection with her State Farm Bank account, and then gets called at that number when she fails to pay the amount due on that account.  Fortunately, the law developed under the TCPA requires State Farm Bank be granted summary judgment under the undisputed facts presented here.

**A.  State Farm Bank Had Prior Express Consent To Call Betancourt At 754-244-8626 To Discuss The Debt She Owed On Her Credit Card Account With State Farm Bank And, Thus, There Was No Violation Of The TCPA.**

---

[3] Documents produced by Osorio indicate he spoke to a lawyer about the calls at least by March 2011, but neither he nor his lawyer advised State Farm Bank that 754-244-8626 was his cell number and not a number on which Betancourt could be reached and that State Farm Bank should stop calling it.  Instead, after speaking to his attorney, he simply kept a log of the calls. (Osorio Depo. at 74-75, Ex. 7)

There can be no violation of section 227(b)(1)(A)(iii) if State Farm Bank had prior express consent to call Betancourt at 754-244-8626. As the undisputed evidence and applicable law establish, State Farm Bank had that express consent by virtue of Betancourt providing that number to State Farm Bank, thereby authorizing State Farm Bank to call her at that number. Accordingly, State Farm Bank is entitled to summary judgment.

The undisputed evidence establishes that Betancourt provided to State Farm Bank 754-244-8626 as *her* number at which State Farm Bank could call her on three separate occasions:  in her initial application (as her cell phone); in her change of address form (as her work phone); and in a call-in request to change her contact information (as her home phone).  Although Plaintiff later had State Farm Bank change her home phone to another cell number on her "family" cell plan with Osorio, she never asked that her work number be changed to some other number.  As a result, 754-244-8626 remained identified as Betancourt's work number in State Farm Bank's account records for Betancourt through the time her account went into default and throughout the time during which all the calls at issue were placed.

When Betancourt's account went into default, State Farm Bank outsourced its debt collection efforts to FMS.  Per its routine practice, State Farm Bank provided FMS with Betancourt's home and work telephone numbers as reflected in its records as they were provided to it by Betancourt. Thereafter, in an effort to collect Betancourt's debt to State Farm Bank, FMS made numerous calls, some using an autodialer, to both Betancourt's home number (754-244-5645) and her work number (754-244-8626) as reflected in State Farm Bank's records.

In interpreting the TCPA's "express consent" language, the FCC has repeatedly determined that persons who provide phone numbers to creditors are providing express consent to the creditors to call them on the numbers provided.  For instance, in its report and order adopting regulations under the TCPA, the FCC stated that "persons who knowingly release their

phone numbers have in effect given their invitation or permission to be called at the number which they have given." *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928, ** 11 (F.C.C. 1992) ("*1992 FCC TCPA Order*").  In directly addressing the issue in a declaratory ruling clarifying the *1992 FCC TCPA Order*, the FCC stated:

> [W]e clarify that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the "prior express consent" of the called party.

> \*      \*      \*      \*

> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, *e.g.,* as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt. . . . The legislative history in the TCPA provides support for this interpretation. Specifically, the House report on what ultimately became section 227 states that:

>> [t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications.

*In re Rules and Regulations Implementing the TCPA*, 23 FCC Rcd. 559, 564, 2008 WL 65485, **1, 3 (F.C.C. 2008) ("*FCC Decl. Ruling 07–232*") (footnotes omitted).

This Court's (Judge Cecilia M. Altonaga's) recent decision in *Cavero v. Franklin Collection Serv. Inc.*, No. 11–22630–CIV, 2012 WL 279448 (S.D. Fla. Jan. 31, 2012), is on point and controlling.  There, plaintiff asserted TCPA claims against a debt-collector defendant who had called plaintiff's cell phone with an autodialer multiple times in an attempt to collect a debt owed by plaintiff to a creditor.  After quoting from *FCC Decl. Ruling 07-232*, this Court held that, "if [plaintiff] provided [the] creditor . . . with his cell phone number, he provided express

consent to be called by defendant in connection with a debt owed to [the creditor]."   2012 WL

279448 at *3.   Because there was no dispute plaintiff had provided his cell number to the creditor

in connection with his account, this Court entered summary judgment for defendant.   *Id.* at *3-4.

*Accord Moise v. Credit Control Servs., Inc.*, No. 11-60026-CIV-SEITZ (S.D. Fla. Oct. 18, 2011)

(holding, if plaintiff gave his cell number to creditor that called his cell phone with an autodialer,

plaintiff gave express consent for the calls, citing *FCC Decl. Ruling 07-232*) (attached as Ex. A).

   Other courts have likewise entered summary judgment for defendants on TCPA claims

under similar circumstances.   *See, e.g., Starkey v. Firstsource Advantage, LLC*, No. 07-CV-

662A(Sr), 2010 WL 2541756, at *6 (W.D.N.Y. Mar. 11,2010), rep't and rec. adopted at 2010

WL 2541731 (W.D.N.Y. Jun. 21, 2010) (entering summary judgment for defendant on TCPA

claim, holding debtor's provision of his cell number to the creditor establishes express consent);

*Cunningham v. Credit Management, L.P.*, No. 3:09-cv-1497-G (BF), 2010 WL 3791104, at *4

(N.D. Tex. 2010), rep't and rec. adopted at 2010 WL 3791049 (N.D. Tex. Sep. 27, 2010)

(entering summary judgment for defendant on TCPA claim because plaintiff's cell number was

in defendant's account records and plaintiff did not affirmatively disclaim providing the number

to defendant, holding such was sufficient to establish prior express consent).   Indeed, even where

a district court disagreed with the FCC's pronouncement that mere providing of a cell number to

a creditor constitutes express consen, the court held it was required to defer to the FCC's

pronouncement and had no jurisdiction to interpret the statute differently under the Hobbs Act,

28 U.S.C. § 2342.   *See Leckler v. Cashcall, Inc.*, No. C 07-04002 SI, 2008 WL 5000528, at *3

(N.D. Cal. Nov. 21, 2008); *accord Moise* (Ex. A at 4) ("this Court does not have jurisdiction to

determine the validity of the FCC order").

   It is undisputed that Betancourt provided to State Farm Bank in connection with her

credit card account the number 754-244-8626 as her number several times.   Most significantly,

Betancourt sent the following change of address form to State Farm Bank in June 2007, requesting it make that number her work phone number on her account:

Please enter change of address or telephone number below.

3610 sw 40 Street west park

west park florida               FL 33023

754 9631917                      754 2448626

(Hardwick Decl. Ex. 4) Betancourt admits this fact. (Betancourt Depo. at 29-31, Ex. 5) But she attempts to avoid the legal ramifications of this admission by, first, in interrogatory answers, saying she did not understand English very well, and, second, in deposition, saying she "perhaps" provided it as an "emergency" contact number.   (Betancourt's Answers to Interrogatories, No. 13 - "Because I did not understand English well enough.  I was attempting to correct my street address that State Farm Bank had mistakenly listed on the credit card bill."; Betancourt Depo. at 27, 30-31 - "perhaps . . . I put it down as an emergency contact;" "I put it down perhaps as a contact, but I did not understand what for").

Even if these "explanations" were credible, they are legally immaterial.  First, difficulty or even inability to read a document is not a legal excuse for failing to learn its contents. *See Peralta v. Peralta Food Corp.*, 506 F. Supp. 2d 1274, 1282-83 (S.D. Fla. 2007) ("[t]he burden is on the person who cannot read to know that he cannot read and if he desires to have an instrument read and explained to him to select a reliable person to do so") (citing *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton*, 467 So. 2d 311, 313 (Fla. 5th DCA 1985) ("[w]e merely hold these facts [inability to read English] do not invalidate the written agreement and do not constitute a sufficient legal defense to it")). Notably, rather than an "excuse," this is actually an *admission that Betancourt was at least negligent in misrepresenting to State Farm Bank 754-*

*244-8626 was her work number*, if such was not true. And, even if she did not understand English very well or thought she was providing an emergency number (although she wrote it over "work phone"), the fact remains she provided the number to State Farm Bank in connection with her credit card account. Under the well-established law set forth above, this constitutes "prior express consent" within the meaning of the TCPA.

Moreover, the undisputed evidence in the case establishes that 754-244-8626 is one of three numbers on the MetroPCS family plan that was shared between Betancourt, Osorio and their son. (CSUMF ¶ 3-6) Under these circumstances, Betancourt and Osorio are deemed to have had common authority over the numbers on the "family plan." As such, Betancourt's express consent to State Farm Bank to call 754-244-8626 exists even if that number rang to the phone routinely used by Osorio. *See Gutierrez v. Barclays Group*, 2011 WL 579238, at *3 (S.D. Cal. 2011) ("Plaintiff possessed 'common authority' over his wife's cellular telephone such that he could give Defendant 'prior express consent' for its use of her cellular number, and indeed, that is precisely what happened when Mr. Gutierrez listed her number on the account"). Indeed, Betancourt has testified she did not need Osorio's permission to provide the number, at least as an emergency number. (Betancourt Depo. at 55)

Betancourt, in what can be characterized as at best incredible testimony, has stated that, when she called State Farm Bank on September 29, 2010 to have her home number on the account changed, she also told State Farm Bank to stop calling 754-244-8626, that it was not her number, and she only provided it as an emergency contact number. (Betancourt Depo. at 64-65) But it remains undisputed that Betancourt never revoked her consent to call 754-244-8626 in writing (as she had provided her consent). The majority of decisions addressing the issue have held that revocation of prior express consent under the TCPA must be in writing. *See Moore v.*

*Firstsource Advantage, LLC*, 2011 WL 4345703, at *11-12 (W.D.N.Y. Sept. 15, 2011) (oral request to stop calling cell number is ineffective to revoke express consent under the TCPA; written revocation of express consent is required); *Moltz v. Firstsource Advantage, LLC*, 2011 WL 3360010, at *5-6 (W.D.N.Y. Aug. 23, 2011) (same); *Cunningham*, 2010 WL 3791104, at *4, adopted at 2010 WL 3791049 (same); *Starkey*, 2010 WL 2541756, at *6, adopted at 2010 WL 2541731 (same); *but cf. Gutierrez*, 2011 WL 579238, at *3-4 (express consent can be revoked orally).

State Farm Bank anticipates that Osorio will argue that State Farm Bank must demonstrate that it had prior express consent not only to call the cell number, but also to place the calls *with an autodialer*.[4] This argument was recently rejected by this Court (Judge Patricia A. Seitz) in *Moise*. There, plaintiff argued that, even if he had given his cell number to the creditor, thus, constituting express consent pursuant to *FCC Decl. Ruling 07-232*, "such an act does not constitute express consent *to receiving automated phone calls*, as [purportedly] required by the TCPA." Ex. A at 2 (emphasis added). This Court flatly rejected that argument, holding, "[b]ased on the plain language of the TCPA and the FCC order, it is clear that if Plaintiff gave his cell phone number directly to [the creditor], that would constitute express consent," and, so, "if Plaintiff provided his number directly to [the creditor], Defendant had express consent to call Plaintiff's cell phone," notwithstanding lack of any specific consent to calls using an autodialer. *Id.* at 3, 5.

Such an argument was necessarily rejected again less than two months ago by this Court in *Cavero*, discussed above. There, defendant did not dispute it called plaintiff's cell phone

---

[4] State Farm Bank anticipates this argument because Betancourt—who is represented by the same attorney as Osorio—made this argument in her motion to dismiss State Farm Bank's third-party complaint. [D.E. 22] Osorio's and Betancourt's attorney was also counsel for the plaintiff in *Moise*, where this argument was rejected, and should know there is no basis in law for it.

using an autodialer — "rather, at issue is whether [plaintiff] provided his express prior consent." *Cavero*, 2012 WL 279448, at *3.   Because plaintiff provided defendant with his cell phone number, this Court held the plaintiff provided his prior express consent and entered summary judgment for the defendant.  *Id* at *4.  The Court so ruled notwithstanding there was no evidence that plaintiff consented to his cell being called specifically by an autodialer.[5]  Accordingly, this Court should reject any such argument presented by Osorio here.

> **B.    Betancourt—Not Osorio—Was The "Called Party" Who Could Give Consent And, Therefore, Osorio Has No Standing To Bring His TCPA Claim.**

The factual circumstances of this case are very much like those before the court in *Leyse v. Bank of America*, 2010 WL 2382400 (S.D.N.Y. June 14, 2010).   There, plaintiff (Leyse) sought damages under the TCPA for calls he answered that were intended for his roommate, Dutriaux.  *Leyse*, 2010 WL 2382400, at *2.  Just as State Farm Bank's records here indicated that the number in question was associated with Betancourt (not Osorio), Bank of America's agent's "records demonstrate[d] that it associated the phone number with Dutriaux, not with Leyse." *Leyse*, at *4.  The court found that Leyse was "not a 'called party' within the meaning" of the TCPA. *Id*.  Rather, Leyse "was an unintended and incidental recipient of the call." *Id*.

Of particular relevance to this case, in *Leyse*, the court found that "[t]he face of the statute itself permits prerecorded calls when a business has the prior express consent of the 'called party.'" *Id*. at *5.  And, while the opinion in *Leyse* cites 47 U.S.C. § 227(b)(1)(B)—the provision of the TCPA that addresses calls to residential numbers—the concept that calls can be made to a cellular telephone when the called party (in this case, Betancourt) provides prior express consent

---

[5] In addition, since section 227(b)(1)(A)(iii) precludes calls to a cell phone only if made with an autodialer or an artificial or prerecorded voice message, the FCC's and the courts' holdings that providing the cell number to the creditor constitutes the necessary express consent would be meaningless if they are not construed to mean express consent to calls made with autodialers or artificial or prerecorded voice messages.

is set forth in substantively identical language in 47 U.S.C. § 227(b)(1)(A)(iii)—the provision of

the TCPA that addresses calls to cellular numbers involved here.   *Compare* 47 U.S.C. §

227(b)(1)(B) (making it a violation to initiate an otherwise prohibited call "without the prior

express consent of the *called party*") *with* 47 U.S.C. § 227(b)(1)(A)(iii) (making it a violation to

make an otherwise prohibited call "other than a call . . . made with the prior express consent of

the *called party*") (emphasis added).  In *Leyse*, the court concluded that

> Leyse was not the called party, although Leyse answered the telephone. Bank of
> America called Dutriaux, and it is Dutriaux who could grant permission for Bank
> of America to place that call to her, or pursue her statutory damages. Bank of
> America did not call Leyse; therefore, Bank of America was not required to seek
> Leyse's permission to place the call.

*Id.*

Moreover, in *Leyse*, the court held that Bank of America was not required to determine

whether Dutriaux, who provided consent to call the number, was the telephone subscriber.  *Id.*

Rather, the court held that, "[i]f Bank of America had the prior express consent of Dutriaux to

place the call to her residence, it would be free to call Dutriaux regardless of whether Dutriaux

was the residential telephone subscriber."  *Id.*  The court rejected the absurd result that Leyse

advocated, noting that "[t]o find otherwise would mean that when a business calls a person with

a prerecorded message, that business could be liable to any individual who answers the phone

despite the fact that the business only intended to call one person [who had consented to the

call]."  *Id.* (citing *Kopff v. World Research Group, LLC*, 568 F. Supp. 2d 39, 42 (D. D.C. 2008)

(fax addressed to individual gives a TCPA cause of action to that individual only; it does not

create cause of action for assistant who picks up the fax from the fax machine)); *see also Cellco

P'ship v. Dealers Warranty LLC*, 2010 WL 3946713, at *10-11 (D. N.J. Oct. 5, 2010) (the party

asserting a claim under the TCPA must be the "called party (i.e., the intended recipient of the

call) [or] the exception contemplated by Congress in § 227(b)(1)(A) for calls made with 'the

prior express consent of the called party' would be rendered meaningless"); *see also Meadows v. Franklin Collection Serv., Inc.*, 414 F. Appx. 230, 235 (11th Cir. 2011) (holding established business relationship exception to TCPA-prohibited calls applied notwithstanding plaintiff who received the calls was not the debtor and had no business relationship with defendant, but the intended recipients of the calls (i.e., the called parties) were debtors with an established business relationship with defendant, affirming summary judgment for defendant).[6]

In the present case, the undisputed evidence establishes that Betancourt, not Osorio, was the "called party," i.e., the intended recipient of all the calls about which Osorio complains. (CSUMF ¶ 30-31) As such, it was Betancourt, not Osorio, who was required to have provided express consent and, as discussed above, did provide that express consent by providing to State Farm Bank 754-244-8626 as her number in connection with her credit card account. It follows that Osorio, who was not the "called party," has no standing to pursue a TCPA claim against State Farm Bank for the calls at issue. Accordingly, this Court should enter summary judgment for State Farm Bank on Osorio's TCPA claim.

### C.   There Was No Charge For Any Of The Collection Calls At Issue And, Therefore, No TCPA Violation Exists.

In order to establish liability under Section 227(b)(1)(A)(iii) of the TCPA, plaintiff must prove that the called party was charged for the offending call. This is an express statutory requirement. Section 227(b)(1)(A)(iii) of the TCPA only prohibits calls made using an autodialer or an artificial or prerecorded voice "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier

---

[6] There is a minority view that the telephone subscriber has standing to sue under the TCPA even if the subscriber is not the "called party." *See Guiterrez*, 2011 WL 579238, at *4-5. But the Eleventh Circuit's decision in *Meadows* requires this Court follow the majority rule set forth in the text.

service, or any service *for which the called party is charged for the call*." 47 U.S.C. §

227(b)(1)(A)(iii) (emphasis added).

      During the rule making process for regulatory implementation of the TCPA, the FCC

interpreted and clarified this provision of the statute:

> Based on the plain language of § 227(b)(1)[(A)](iii), we conclude that the TCPA
> did not intend to prohibit autodialer or prerecorded message calls to cellular
> customers for which the called party is not charged.

*1992 FTC TCPA Order,* ¶ 45, 1992 WL 690928, at **16.  Thus, both the plain meaning of the

statute and the FCC's interpretation of the statute indicate that a violation of section

227(b)(1)(A)(iii) occurs only if an autodialer is used to make calls to a cell phone for which the

called party is charged.

      State Farm Bank acknowledges that some courts have taken a different view on the issue

and found the language "for which the called party is charged for the call" modifies only the last

item in the statutory list, to wit "any service."  *See, e.g., Lozano v. Twentieth Century Fox Film

Corp.,* 702 F.Supp. 2d 999, 1009-10 (N.D. Ill. 2010) and case cited.  But cell service is a form of

"any service."   In any event, State Farm Bank submits that this Court should not adopt the

holding in those cases because the district courts overstepped their authority in rejecting the

FCC's interpretation of the statute, a practice prohibited by the Hobbs Act, 28 U.S.C. § 2342.

*See, e.g., Moise* (Ex. A at 4); *Leckler,* 2008 WL 5000528, at *2.

      Here, the undisputed facts show neither Betancourt, the called party, nor Osorio was

charged for the calls at issue.  (CSUMF ¶ 6)  Osorio concedes this fact.  (Osorio Depo. at 63-64)

Because the incoming calls Osorio received from State Farm Bank or its collection agent did not

result in a charge to Osorio and had no impact on the amount paid for the unlimited cellular

telephone service family plan, Osorio's TCPA claim fails.

**D.      Because FMS, Not State Farm Bank, Made the Calls, State Farm Bank Is Entitled To Summary Judgment On Osorio's TCPA Claim.**

State Farm Bank outsources all its credit card collection activity and makes no collection calls itself. (CSUMF ¶ 29)  In this case, State Farm Bank authorized FMS to seek collection of the debt owed by Betancourt to State Farm Bank. (*Id.*) All of the calls Osorio claims violated section 227(b)(1)(A)(iii) were made by FMS, not State Farm Bank, albeit they were made on behalf of State Farm Bank. (*Id.* ¶ 29-30)

Section 227(b)(1)(A) provides in relevant part that it "shall be unlawful for any person . . . *to make* any call . . ." (emphasis added).  In this case, State Farm Bank did not "make" the calls at issue.  Unlike section 227(c)(5), which provides for a private right of action for a violation of the "do not call" regulations for calls made "by *or on behalf of*" a party, section 227(b)(1)(A) does not contain the "on behalf of" language.

In *Desai v. ADT Security Services, Inc.*, 2011 WL 2837435 (N.D. Ill. 2011), the court addressed a similar argument.  In that case, the court rejected the argument, but did so under an analysis of a claim under section 227(b)(1)(B), which provides it is unlawful for any person "to initiate" the offending call.  The court expressly distinguished the terms "initiate" (in section 227(b)(1)(B)) and "make" (in section 227(b)(1)(A)), holding that "initiate," *unlike "make,"* was broad enough to include a defendant who authorized and urged a third party to make the calls on its behalf as alleged in that case:

> [S]ubsection (b)(1)(B)'s prohibition on "initiating" phone calls, *as opposed to subsection (b)(1)(A)(iii)'s prohibition on "making" calls*, clearly indicates that liability [under subsection (b)(1)(B)] does not require a party to *make* a call [as subsection (b)(1)(A)(iii) does].  The term "initiate" is broad enough to include cases where, as plaintiffs allege of [defendant] here, a party has encouraged or otherwise prompted its authorized dealers to make calls on its behalf.

*Id.* at *1 (emphasis added).

Under the analysis in *Desai* quoted above, State Farm Bank is entitled to summary

judgment on Osorio's claim under subsection (b)(1)(A)(iii) because State Farm Bank did not "make" the calls.  State Farm Bank acknowledges that the FCC has indicated liability can exist under subsection (b)(1)(A) for a party "on whose behalf" calls are made, *FCC Decl. Ruling 07-232*, but, while the FCC can interpret Congressional language, it is not authorized to add language ("on behalf of") that Congress chose not to include in that subsection like it did in subsection (c)(5).[7]  *See Mohasco Corp. v. Silver*, 100 S.Ct. 2486, 2497 (1980) (agency's interpretation of statute cannot supersede the language chosen by Congress).

## II.   THE COURT SHOULD ENTER PARTIAL SUMMARY JUDGMENT FOR STATE FARM BANK, PRECLUDING RECOVERY OF TREBLE DAMAGES.

Pursuant to 47 U.S.C. § 227(b)(3), a person bringing an action based on a violation of section 227(b)(1)(A)(iii) may seek to recover for actual monetary loss or receive $500 in damages for each violation, whichever is greater. 47 U.S.C. § 227(b)(3)(B).  Section 227(b)(3) goes on to provide that, "[i]f the court finds that the defendant willfully or knowingly violated this subsection . . . , the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."  Although Osorio does not make a specific claim for treble damages in his complaint

---

[7]  The FCC may well have been interpreting its regulation instead of the statute. Notwithstanding the difference in meaning between "make" and "initiate" as recognized in *Desai*, in its regulations that parallel subsection (b)(1)(A), 47 C.F.R. § 64.1200(a)(1), the FCC improperly changed Congress' word "make" to "initiate," which has a broader meaning than Congress intended. *See Board of Governors of Federal Reserve System v. Dimension Financial Corp.,* 106 S.Ct. 681, 685-86 (1986)( "If the statute is clear and unambiguous 'that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.' The traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress.") (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 104 S.Ct. 2778, 2781-82 (1984)).

and does not allege the calls made by State Farm Bank amounted to a "willfully or knowingly"

violation, he makes reference to this relief being available under the statute in his complaint.

Based on the undisputed evidence of record, this Court should hold there was no TCPA

violation in the first place as discussed in the foregoing sections of this motion.  In any event,

there certainly is no evidence that State Farm Bank "willfully or knowingly" violated the TCPA.

On behalf of State Farm Bank, FMS merely called a phone number Betancourt had provided to

State Farm Bank as her work number in connection with her account in order to attempt to

collect a valid debt owed by Betancourt to State Farm Bank.  Neither State Farm Bank nor FMS

was ever notified by any of the persons answering calls to that number that it was not

Betancourt's number or it was a cell phone number belonging to someone other than Betancourt.

(CSUMF ¶ 32) To the contrary, in some of the contacts that were made, the answering party

simply indicated Betancourt was not available, thus, indicating it was Betancourt's number. (*Id.*)

Under these undisputed facts, this Court should grant partial summary judgment for State Farm

Bank, precluding any claim for treble damages under section 227(b)(3).

## III.     The Court Should Enter Partial Summary Judgment For State Farm Bank On Osorio's Request For Injunctive Relief.

The TCPA permits an individual to seek to enjoin a violation of the TCPA only "if

otherwise permitted by the laws or rules of court of a State."  47 U.S.C. § 227(b)(3).  Federal

courts regularly restrict application of various provisions of the TCPA that are expressly subject

to state law.  *See, e.g., US Fax Law Ctr., Inc. v. Ihire, Inc.*, 476 F.3d 1112, 1118-20 (10th Cir.

2007) (applying Colorado law based on identical language regarding application of substantive

state law to claims under TCPA, and holding that TCPA claims are not assignable under

Colorado law); *Eclipse Mfg. Co. v. M & M Rental Ctr., Inc.*, 521 F. Supp. 2d 739, 743-44 (N.D.

Ill. 2007) (applying Illinois law and holding that claims under TCPA are assignable); *Giovanniello v. New York Law Publ'g Co.*, No. 07 Civ. 1990(HB), 2007 WL 2244321, at *4 (S.D.N.Y. Aug. 6, 2007) (applying New York law and holding that class actions are not authorized under the TCPA).

In Florida, as a matter of law, injunctive relief is not available where the movant's "loss is compensable by money damages." *See, e.g., Barclays Am. Mortgage Corp v. Holmes*, 595 So. 2d 104, 105 (Fla. 5th DCA 1992) ("irreparable harm [an essential element for injunctive relief] does not exist where the potential loss is compensable by money damages"); *B.H.G. Ins. Syndicate, Inc. v. Presidential Fire & Cas. Co.*, 549 So. 2d 197, 198 (Fla. 3d DCA 1989) (holding that an adequate remedy at law exists where loss could be compensated by a monetary award). Federal law is in accord. *See, e.g., Monsanto Co. v Geertson Seed Farms*, 130 S.Ct. 2743, (2010) (injunctive relief inappropriate unless plaintiff suffers irreparable harm, legal remedies such a money damages are inadequate, equity warrants the injunctive relief, and public interest would not be disserved by injunctive relief). The TCPA expressly provides for a minimum of $500 in damages per violation. 47 U.S.C. § 227(b)(3)(B). Accordingly, as a matter of law, Osorio is not entitled to injunctive relief under the TCPA and the Court should enter partial summary judgment for State Farm Bank on Osorio's request for such relief.

In addition, it is undisputed that the last collection call made on behalf of State Farm Bank to Betancourt with an autodialer was on May 31, 2011. (CSUMF ¶ 30) There is no evidence of any on-going collection calls to Betancourt or Osorio and, therefore, there is nothing

to enjoin.   This provides an independent basis for entering partial summary judgment on Osorio's claim for injunctive relief.

**CONCLUSION**

Based on the foregoing discussion and authorities, this Court should enter summary judgment for State Farm Bank and against Fredy Osorio on Osorio's TCPA claim.   In the alternative, the Court should enter partial summary judgment for State Farm Bank on any claim for treble damages and on Osorio's claim for injunctive relief.

Dated: March 26, 2012

s/  *Paul L. Nettleton*

Paul L. Nettleton (396583)
E-mail: pnettleton@carltonfields.com
Aaron S. Weiss (48813)
E-mail: aweiss@carltonfields.com
Carlton Fields, P.A.
100 SE Second Street, Suite 4200
Miami, Florida  33131
Telephone: (305) 530-0050
Facsimile:  (305) 530-0055

*Attorneys for Defendant/ Third-Party Plaintiff State Farm Bank Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_s/_      *Paul L. Nettleton*

## SERVICE LIST

*Osorio v. State Farm Bank Bank, F.S.B.*
CASE NO. 11-61880-cv-MIDDLEBROOKS/JOHNSON

Donald A. Yarbrough, Esq.
E-mail: donyarbrough@mindspring.com
P.O. Box 11842
Ft. Lauderdale, FL 33339
Tel: 954-537-2000
Fax: 954-566-2235
(Via CM/ECF)

*Attorney for Plaintiff Fredy D. Osorio and Third-Party Defendant Clara Betancourt*