UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61880-cv-MIDDLEBROOKS/JOHNSON

FREDY D. OSORIO,

    Plaintiff,

v.

STATE FARM BANK, F.S.B.,

    Defendant /Third-Party Plaintiff

v.

CLARA BETANCOURT

    Third-Party Defendant

_____/

### DECLARATION OF DOUG HARDWICK

Pursuant to 28 U.S.C. §1746, the undersigned states as follows:

1.    My name is Doug Hardwick. I am a Bank Manager employed by State Farm Bank, F.S.B. In that role, among other responsibilities, I manage State Farm Bank's credit card collections operation.

2.    The information contained herein is based on my personal knowledge and the business records of State Farm Bank. State Farm Bank's records referred to herein are recorded at or near the time, by, or from information transmitted by, a person with personal knowledge of the matters being recorded. These records are made and kept in the ordinary course of State Farm Bank's regularly conducted business activities, and it is the regular practice of State Farm Bank's business activities to make and maintain these records. I regularly use and rely on State Farm Bank's records in the normal course of carrying out my duties and responsibilities with State Farm Bank.

1

3. On May 10, 2007, Clara Betancourt ("Betancourt") submitted an electronic application for a credit card account to State Farm Bank. A true and correct copy of the information supplied in that electronic application was identified as Exhibit C at my deposition on February 29, 2012, and is attached hereto as Exhibit 1. The agent code on the application indicates the application was submitted through the Mike Campbell Insurance Agency located in Hallandale Beach, Florida. The email alias data in the application indicates it was transmitted by Luis Merced, an employee of the Mike Campbell Insurance Agency.

4. The Mike Campbell Insurance Agency, although an independent contractor like all other State Farm agents, is an exclusive agent of the State Farm companies and is authorized to sell State Farm products for the various State Farm companies. In this regard, the Mike Campbell Insurance Agency and its employees were and are authorized to submit electronic applications for credit card accounts on behalf of prospective customers to State Farm Bank, such as the electronic application submitted on behalf of Betancourt on May 10, 2007.

5. State Farm Bank requires an applicant for a credit card to provide a telephone number, along with other information, before State Farm Bank will consider the an application for a credit card. The applicant can provide a home, work or cellular telephone number, and State Farm's electronic application contains a field for each, but the applicant need only provide a single telephone number.

6. The State Farm Bank electronic credit card application has a field for the applicant's cellular telephone number. As reflected in Betancourt's credit card application, Betancourt provided to State Farm Bank the number 754-244-8626, representing and warranting that it was her cellular telephone number.

7. Betancourt's application for a credit card was approved and State Farm Bank mailed to Betancourt, at the address she provided in the application, a credit card issued by State Farm Bank, along with the State Farm Bank Credit Card Agreement and Disclosure Statement that sets out the terms and conditions of the contractual relationship between State Farm Bank and Betancourt. A true and correct copy of the applicable State Farm Bank Credit Card Agreement and Disclosure Statement was identified as Exhibit F at my deposition on February 29, 2012, and another is attached hereto as Exhibit 2.

8. Betancourt's first State Farm Bank credit card statement, with a closing date of May 26, 2007, shows that the first charge on her credit card was for her insurance policies. A true and correct copy of this credit card statement was a part of Exhibit E at my deposition on February 29, 2012, and another copy is attached hereto as Exhibit 3.

9. After her receipt of that first statement, in early June 2007, Betancourt filled out a change of address form on the back of the statement and mailed it to State Farm Bank. A true and correct copy of both sides of that document were identified as Exhibit D at my deposition on February 29, 2012, and another copy is attached hereto as Exhibit 4. On that document, Betancourt requested State Farm Bank to change the municipality for her address from Hollywood to West Park and she also requested that State Farm Bank update its records to reflect that her work phone number changed to 754-244-8626 from 954-549-7596 as she had provided in her application.

10. On June 14, 2007, per Betancourt's request, State Farm Bank updated its records to reflect Betancourt's work telephone number was 754-244-8626, and to change her mailing address municipality to West Park. This is reflected in the account notes for Betancourt's account with State Farm Bank identified as Exhibit A in my deposition on February 29, 2012,

and another copy of the particular page (batestamp page number 287) is attached hereto as Exhibit 5.

11. Betancourt called into State Farm Bank's customer service line to make two additional changes to her contact information before her account went into default. On May 29, 2008, Betancourt requested that State Farm Bank update its records to reflect her home phone number had changed to 754-244-8626, replacing the home number of 954-963-1917 she had provided in her application. On September 29, 2010, Betancourt requested State Farm Bank update its records to reflect her home phone number had changed again, this time to 754-244-5645. State Farm Bank updated its records accordingly on each of these dates. This is reflected in the account notes to Betancourt's account with State Farm Bank, a true and correct copy of which was identified as Exhibit A at my deposition on February 29, 2012, and another copy of the relevant pages (batestamp page numbers 286 and 283) are attached hereto as Exhibit 6. At no time since then did Betancourt request her contact information be updated or changed.

12. From the time Betancourt opened her credit card account in May 2007 through May 2010, State Farm Bank mailed Betancourt credit card statements or bills on an approximately monthly basis for whatever outstanding credit card debt Betancourt had accrued. True and correct copies of these statements were designated as Exhibit E at my deposition on February 29, 2012.

13. Betancourt paid at least the minimum amounts due on her monthly statements for several years after the account was open. However, Betancourt failed to make any payment on her statement with a closing date of October 26, 2010 before the due date as reflected in her statement with a closing date of November 26, 2010. True and correct copies of the billing statements were designated as Exhibit E at my deposition on February 29, 2012, and a copy of

the latter statement is attached hereto as Exhibit 7. Betancourt has made no payments on her account since that date.

14. State Farm Bank outsources all its credit card collection activity and makes no collection calls itself. In this case, in November 2010, State Farm Bank authorized FMS, Inc. ("FMS"), to seek collection of the debt owed on Betancourt's account from Betancourt. FMS is an independent company that provides debt collection services and is not affiliated with State Farm Bank or any other State Farm company. State Farm Bank provided to FMS Betancourt's home number (754-244-5645) and her work number (754-244-8626) as reflected in its records at that time.

15. In its attempts to collect Betancourt's credit card debt, State Farm Bank, through its collection agency, FMS, called Betancourt at both her home number (754-244-5645) and her work number (754-244-8626). These calls began on November 29, 2010 and concluded on May 31, 2011. The calls are reflected in the account notes to Betancourt's account with State Farm Bank, true and correct copies of which were identified as Exhibit A at my deposition on February 29, 2012.

16. Each and every call made to 754-244-8626 by FMS on behalf of State Farm Bank was made to Betancourt in an effort to collect a valid debt she owed to State Farm Bank.

17. As the account notes for Betancourt's account with State Farm Bank reflect, most of the calls resulted in no contacts, i.e., no answers or hang ups. Based on the account notes, as well as the recordings of calls made, a number of contacts were made with persons answering calls made to 754-244-8626. If a person answered, the FMS operator would ask to speak to Betancourt. At no time did anyone advise State Farm Bank or FMS that the number did not belong to Betancourt or to stop calling the number. To the contrary, as these records reflect,

persons answering a number of the calls to that number indicated that Betancourt was simply not available at the time of the call. State Farm Bank's account notes, and the recordings of the calls, indicate that both males and females answered calls placed to 754-244-8626 on several occasions. True and correct copies of the relevant pages of the account notes (batestamped page numbers 17, 54, 147, 196, 218, 226, 247, 254, 262, 271, 282) are part of Exhibit A identified at my deposition on February 29, 2012, and are attached hereto as Exhibit 8.

18. On or about June 1, 2011, State Farm Bank charged off the balance due on Betancourt's account as bad debt. This was purely for accounting purposes and Betancourt continues to owe her debt to State Farm Bank. Thereafter, collection efforts were undertaken by NCB Management Services, Inc. ("NCB"), on behalf of State Farm Bank as to Betancourt's outstanding debt to State Farm Bank. Although NCB made additional calls to Betancourt's home number and work number as reflected in State Farm Bank's records, none of those calls was made with an automatic telephone dialing system or involved use of an artificial or pre-recorded voice.

19. As of June 1, 2011, Betancourt was indebted to State Farm Bank in the amount of $7,945.10, in principal, accrued interest through that date, and late fees through that date, as reflected on the last statement sent to Betancourt with closing date of May 26, 2011. A true and correct copy of that statement is included within Exhibit E to my deposition on February 29, 2012, and another copy is attached hereto as Exhibit 9. Betancourt has never made any payment on this outstanding debt and continues to owe the debt to State Farm Bank. State Farm Bank has never sold or transferred this debt to any third party.

20. By providing State Farm Bank the telephone number 754-244-8626 as her cellular telephone number and, later, as her work number, Betancourt represented and warranted to State

Farm Bank that the telephone number belonged to her and that State Farm Bank could call her on that number to discuss her account with State Farm Bank. State Farm Bank understands that, when a customer provides a telephone number to it, the customer is expressly consenting to have State Farm Bank call the customer at that number. State Farm Bank relied on Betancourt providing truthful and accurate information to it, including keeping her contact information current and correct, in extending her credit during the time period her credit card account remained open through June 1, 2011. State Farm Bank further relied on Betancourt's representation in the change of address form she provided to State Farm Bank that 754-244-8626 was her work telephone number by updating its records to so reflect, by providing that number as Betancourt's work telephone number to FMS to call Betancourt after Betancourt went into default on her credit card account with State Farm Bank, and by calling Betancourt on that number, through FMS, to discuss her account and to attempt to collect the amounts she owed to State Farm Bank.

21. Before this lawsuit was commenced, no one had ever told State Farm Bank that the number 754-244-8626 was not Betancourt's telephone number. It was only after the commencement of this lawsuit that State Farm Bank was told, through counsel for Plaintiff, Fredy D. Osorio ("Osorio"), that the number 754-244-8626 allegedly did not belong to Clara Betancourt but allegedly belonged to Osorio.

22. Because Betancourt warranted and represented to State Farm Bank that 754-244-8626 was her work number, State Farm Bank, through its collection agency, FMS, made the numerous calls at issue to Betancourt at that number in an attempt to collect the debt Betancourt owed State Farm Bank on her credit card account. Neither State Farm Bank nor its collection agency, FMS, would have made any of the calls to that number but for the fact that Betancourt

warranted and represented to State Farm Bank that it was her work number and consented to and authorized State Farm to call her on that number to discuss her account, including for purposes of collecting past due amounts on the account. Because the calls to that number have resulted in Osorio's lawsuit against State Farm Bank, State Farm Bank believes Betancourt is liable to State Farm Bank for any judgment Osorio might recover against State Farm Bank, along with its attorneys' fees and costs in defending Osorio's claim and in prosecuting its third party claim against Betancourt.

23.    At my deposition on February 29, 2012, I testified that I did not know why State Farm Bank contends that Betancourt would be responsible for any money that State Farm Bank has to pay Osorio or any attorneys' fees that State Farm Bank incurs in Osorio's lawsuit because this was not an area designated for inquiry in the deposition notice to State Farm Bank and I was not prepared to respond to that question at that time as State Farm Bank's representative. I have since reviewed the situation and provide the explanation in the foregoing paragraph of this declaration.

24.    During the course of this lawsuit, I obtained from State Farm Mutual Automobile Insurance Company automobile insurance application information generated and kept in the ordinary course of its business reflecting Betancourt also submitted electronic applications for automobile insurance for two automobiles in her household on May 10, 2007 through the Mike Campbell Insurance Agency. True and correct copies of the data from Betancourt's electronic applications in this regard are attached hereto as Exhibit 10.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of March, 2012.

_____
Doug Hardwick
Bank Manager
State Farm Bank, F.S.B.