UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61880-cv-MIDDLEBROOKS/VITUNAC

FREDY D. OSORIO,

    Plaintiff,

v.

STATE FARM BANK, F.S.B.,

    Defendant / Third-Party Plaintiff

v.

CLARA BETANCOURT

    Third-Party Defendant
_____/

### THIRD-PARTY PLAINTIFF'S RESPONSE IN OPPOSITION TO THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Third-Party Plaintiff, State Farm Bank, F.S.B. ("State Farm Bank"), responds in opposition to Third-Party Defendant, Clara Betancourt's ("Betancourt"), Motion for Summary Judgment as follows.[1]

#### INTRODUCTION

The undisputed evidence establishes that in 2007 Betancourt applied for and was issued a State Farm Bank credit card. (CSUMF ¶ 7, 17) In connection with her credit card account, Betancourt provided to State Farm Bank 754-244-8626 as *her* number at which State Farm Bank could call her on three separate occasions: in her initial application (as her cell phone); in her

---

[1] In further opposition to Betancourt's motion for summary judgment, State Farm Bank adopts and incorporates its pending Motion for Summary Judgment Against Third-Party Plaintiff. [D.E. 36], its Consolidated Statement of Undisputed Facts [D.E. 37], its Counter-Statement of Material Facts in Response to Third-Party Defendant's Statement of Material Facts, and the record evidence cited to in each of them. References to State Farm Bank's Consolidated Statement of Undisputed Material Facts [D.E. 37] are cited as "CSUMF ¶ [number]". References to State Farm Bank's Counter-Statement of Material Facts in Response to Third-Party Defendant's Statement of Material Facts, which is being filed in conjunction with this response, are cited as "CSB ¶ [number]".

change of address form (as her work phone); and in a call-in request to change her contact information (as her home phone). (CSUMF ¶ 16, 19-20, 23; CSB ¶ 3, 4, 5, 6) In 2010, when Betancourt defaulted on her account by failing to make payment as required, State Farm Bank caused Betancourt to be called at the number she provided as her own and expressly consented to be called at for the purpose of collecting a valid debt owed to State Farm Bank. (CSUMF ¶ 25, 30; CSB ¶ 3, 4, 5, 6) These are the calls that Plaintiff, Fredy D. Osorio ("Osorio"), complains about and form the basis of his TCPA claim. (CSUMF ¶ 39; CSB ¶ 5)

Because State Farm's potential liability to Osorio is entirely the result of Betancourt's provision of the number called to State Farm Bank as her own, expressly consenting to be called at that number by an autodialer, Betancourt is liable to State Farm Bank for any recovery by Osorio against State Farm Bank, along with State Farm Bank's fees and costs incurred in this action, based on its claims for common law and contractual indemnity, breach of contract, and negligent misrepresentation. State Farm Bank is also entitled to recover Betancourt's admitted outstanding debt to it, including its fees and costs in collecting the debt, under its claims for breach of contract, account stated and open account. For all of these reasons, Betancourt's motion for summary judgment should be denied.

## MEMORANDUM OF LAW

### A.  A Material Issue Of Fact Exists As To Whether Betancourt Orally Revoked Her Consent.

Throughout her motion, Betancourt repeatedly relies on her testimony that she orally revoked her consent to State Farm Bank calling her at 754-244-8626 during a September 29, 2010 call with State Farm Bank. In what can be characterized as at best incredible testimony, Betancourt, indeed, has testified that, when she called State Farm Bank on September 29, 2010 to have her home number on the account changed, she also told State Farm Bank to "stop

2

calling" 754-244-8626, that it was not her number, and she only provided it as an emergency contact number. (Betancourt Depo. at 64-65)  Because Betancourt had not yet defaulted on her account at the time of the change request, there had been no calls made to that cellular number as of September 29, 2010 and it is undisputed that no calls were made to that number until two months later, after her account went into default. (CSUMF ¶ 28-31; CSB ¶ 5)  This calls into grave doubt the truthfulness of Betancourt's testimony as to what she said on the September 29, 2010 call.  In addition, State Farm Bank's records demonstrate that the only thing Betancourt requested on that call was to change her home number from 754-244-8626 to 754-244-5645. (CSUMF ¶ 23; CSB ¶ 5)  Thus, there exists a genuine issue of material fact as to what Betancourt said on the September 29, 2010 call.

In addressing Betancourt's motion for summary judgment, this Court is required to construe all evidence and inferences in favor of State Farm Bank.  Thus, this Court must accept as true that Betancourt did <u>not</u> ask State Farm Bank to stop calling 754-244-8626 on the September 2010 call, but rather simply asked State Farm Bank to change her home phone on the account from 754-244-8626 to 754-244-5645, leaving her work number as 754-244-8626. (CSUMF ¶ 23; CSB ¶ 5) Accordingly, this Court should reject all of Betancourt's arguments premised on the assertion that she orally revoked her consent to State Farm Bank calling her at 754-244-8626.

**B.    The TCPA Does Not Require Specific Consent To Be Called Using An Autodialer.**

Throughout her motion, Betancourt argues that, even if she did consent to have State Farm Bank call her at 754-244-8626, she never consented to being called with an autodialer and State Farm Bank's credit card agreement with her does not expressly provide that she was consenting to calls being made by an autodialer.  But regardless of what the credit card

3

agreement says, it was Betancourt's provision of the number to State Farm Bank in connection with her account that acts as her express consent to being called at that number. (CSUMF ¶ 16, 19-20, 23; CSB ¶ 3, 4, 5, 6)

In interpreting the TCPA's "express consent" language, the FCC has repeatedly determined that persons who provide phone numbers to creditors are providing express consent to the creditors to call them on the numbers provided. Starting with its initial report and order adopting regulations under the TCPA, the FCC stated that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given." *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928, ** 11 (F.C.C. 1992) ("*1992 FCC TCPA Order*"). In directly addressing the issue in a declaratory ruling clarifying the *1992 FCC TCPA Order*, the FCC stated:

> [W]e clarify that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the "prior express consent" of the called party.
>
> \*   \*   \*   \*
>
> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, *e.g.,* as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt. . . . The legislative history in the TCPA provides support for this interpretation. Specifically, the House report on what ultimately became section 227 states that:
>
>> [t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications.

4

*In re Rules and Regulations Implementing the TCPA*, 23 FCC Rcd. 559, 564, 2008 WL 65485, \*\*1, 3 (F.C.C. 2008) ("*FCC Decl. Ruling 07–232*") (footnotes omitted).

In *Moise v. Credit Control Servs., Inc.*, No. 11-60026-CIV-SEITZ (S.D. Fla. Oct. 18, 2011) (attached as Exhibit A to State Farm Bank's Motion for Summary Judgment on Plaintiff's TCPA Claim [D.E. 35-1]), plaintiff (represented by counsel who represents Betancourt and Osorio here) argued that, even if he had given his cell number to the creditor, thus, constituting express consent pursuant to *FCC Decl. Ruling 07-232*, "such an act does not constitute express consent *to receiving automated phone calls*, as [purportedly] required by the TCPA." *Moise* at 2. Judge Patricia A. Seitz of this district rejected that argument, holding, "[b]ased on the plain language of the TCPA and the FCC order, it is clear that if Plaintiff gave his cell phone number directly to [the creditor], that would constitute express consent," and, so, "if Plaintiff provided his number directly to [the creditor], Defendant had express consent to call Plaintiff's cell phone," notwithstanding lack of any specific consent to calls using an autodialer. *Id.* at 3, 5.

Such an argument was necessarily rejected again more recently by Judge Cecilia M. Altonaga of this district in *Cavero v. Franklin Collection Serv. Inc.*, No. 11–22630–CIV, 2012 WL 279448 (S.D. Fla. Jan. 31, 2012). There, defendant did not dispute it called plaintiff's cell phone using an autodialer — "rather, at issue is whether [plaintiff] provided his express prior consent." *Cavero*, 2012 WL 279448, at \*3. Because plaintiff provided defendant with his cell phone number, Judge Altonaga held the plaintiff provided his prior express consent and entered summary judgment for the defendant. *Id* at \*4. Judge Altonaga so ruled notwithstanding there was no evidence that plaintiff consented to his cell being called specifically by an autodialer. Moreover, since section 227(b)(1)(A)(iii) precludes calls to a cell phone only if made with an autodialer or an artificial or prerecorded voice message, the FCC's and the multiple court rulings that hold that providing the cell number to the creditor constitutes the necessary express consent

5

would be meaningless if they are not construed to mean express consent to calls made with autodialers or artificial or prerecorded voice messages.

Accordingly, this Court should reject any argument presented by Betancourt premised on the assertion that she did not consent to be called by an autodialer.

### C.     The Credit Card Agreement Is Enforceable.

Betancourt argues that State Farm Bank's credit card agreement is a contract of adhesion. "Under Florida law, a contractual provision is not unenforceable on the ground of unconscionability unless no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice." *Golden v. Mobile Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989) (internal quotations omitted). "[Betancourt] must establish that the [a]greement is both procedurally and substantively unconscionable." *See Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1313 (S.D. Fla. 2009). "Procedural unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms. A contract is substantively unconscionable if its terms are so outrageously unfair as to shock the judicial conscience." *Id.* (internal quotations omitted). Credit card agreements are regularly enforced where the cardholder understands its terms. *See, e.g., Keith v. Wells Fargo Fin. Am., Inc.*, No. 10-cv-1588-T-33EAJ, 2010 WL 4647227, at *3-4 (M.D. Fla. Nov. 9, 2010) (enforcing credit card agreement where the card holder had a "reasonable opportunity to understand the contract terms").

Here, Betancourt is not entitled to summary judgment on this issue as she has not established, or even alleged, that State Farm Bank's credit card agreement is substantively or procedurally unconscionable. To the contrary, Betancourt understood that the credit card agreement obligated her to make monthly payments on her account and that State Farm Bank

6

would call her if her account was past due. (CSUMF ¶ 25, 27; CSB ¶ 1) Accordingly, the credit card agreement is enforceable by State Farm Bank against Betancourt.

      **D.      State Farm Bank's Contract Entitles It To Recover From Betancourt Any Judgment Entered In Favor Of Osorio Against State Farm Bank Along With Its Fees And Costs Incurred In Defending Against Osorio's TCPA Claim.**

Betancourt argues that State Farm Bank is not entitled to contractual indemnification because the attorneys' fees and costs incurred in defending Osorio's TCPA claim are not related to State Farm Bank's attempts to collect and enforce Betancourt's valid credit card debt. Betancourt's argument is divorced from reality. The sequence of events that led to this case are clear:

(1)    Betancourt obtained a credit card from State Farm Bank, used it, and then failed to pay the credit card statements as she agreed to do;

(2)    in obtaining the credit card, Betancourt expressly consented to State Farm Bank calling her on the telephone numbers she provided with regard to her account;

(3)    State Farm Bank called the home and work telephone numbers Betancourt provided on her account to try to get her to pay her debt;

(4)    Osorio sued State Farm Bank under the TCPA, claiming that some of the calls made to the telephone number Betancourt provided to State Farm Bank as her work number were made to his cell phone;

(5)    State Farm Bank filed a third-party complaint seeking to hold Betancourt accountable for any liability State Farm Bank may have to Osorio since Betancourt provided the phone number that Osorio now claims belongs to his cell phone as her own and authorized State Farm Bank to call her on that number; and

(6)    State Farm Bank added claims against Betancourt seeking recovery of the credit card debt that is at the heart of the matter.

(CSUMF ¶ 1, 7, 16, 17, 19-20, 23, 25, 28-31, 36, 37; CSB ¶ 3, 4, 5, 6)

Furthermore, Betancourt concedes that she provided to State Farm Bank the number Osorio claims as his own and that "it *was* a number State Farm [Bank] could reach Betancourt at to discuss her account or past due amounts." [D.E. 45 at 10]  She also admits that she defaulted

7

on her account prior to State Farm Bank calling her. (Betancourt Depo. at 68) The calls Osorio complains about were made only to collect Betancourt's debt, and for no other purpose. (CSUMF ¶ 28-31; CSB ¶ 5, 6) Accordingly, but for Betancourt's default and State Farm Bank's attempts to collect the debt she owed, State Farm Bank would not have been sued by Osorio. (CSUMF ¶ 28-31; CSB ¶ 5, 6)

Betancourt's credit card agreement with State Farm Bank unambiguously entitles State Farm Bank to all costs incurred, including attorneys' fees, in legal proceedings to collect or enforce Betancourt's debt:

> If you are in default, unless prohibited by applicable law, you agree to pay us or reimburse us for all costs and disbursements, including reasonable attorney's fees, we pay or incur in legal proceedings (including bankruptcy proceedings) to collect or enforce the debt you owe under this Agreement.

*See* State Farm Bank Credit Card Agreement [D.E. 42-3] at 5. State Farm Bank has incurred attorneys' fees and costs in defending Osorio's claim, and will continue to incur fees and costs until the matter is resolved. (CSUMF ¶ 40) The agreement entitles State Farm Bank to collect from Betancourt costs associated with actions that involve more than the mere collection of Betancourt's debt—i.e., bankruptcy proceedings. *See* State Farm Bank Credit Card Agreement at 5. Therefore, pursuant to the parties' agreement, Betancourt is liable to State Farm Bank for all fees and costs incurred in defending against Osorio's claim, and she is also liable for any judgment that may be awarded to Osorio from State Farm Bank.

## E. State Farm Bank Is Entitled To Common Law Indemnification.

Betancourt's only argument against State Farm Bank's claim for common law indemnification is that she is not the sole cause of State Farm Bank's potential liability to Osorio because she did not consent to being called *using an autodialer*. However, as a matter of law, Betancourt did expressly consent to being called by State Farm Bank *using an autodialer*. *See, e.g., FCC Decl. Ruling 07–232*, 2008 WL 65485, at \*\*1, 3; *Moise* at 3, 5; *Cavero*, 2012 WL 279448, at \*4. By providing that number to State Farm Bank, she provided express consent to State Farm Bank's calling that number, which would preclude any liability under the TCPA if, in fact it were her number. (CSUMF ¶ 16, 19-20, 23; CSB ¶ 5, 6) Thus, solely as a result of her misrepresentation to State Farm Bank that the number was hers and State Farm Bank could lawfully call her on it using an autodialer, State Farm Bank would have no potential liability to Osorio. (CSUMF ¶ 28-31; CSB ¶ 5, 6) Put another way, State Farm Bank's potential liability to Osorio is wholly derivative of Betancourt providing it the number in question and there is no "fault" on the part of State Farm Bank in having that number called. Accordingly, State Farm Bank and not Betancourt is entitled to summary judgment on its claim for common law indemnification.

## F. Betancourt Is Not Entitled To Summary Judgment On State Farm Bank's Claim For Negligent Misrepresentation.

Betancourt argues that because she could not have foreseen State Farm Bank *using an autodialer* to make calls to the number she provided as her own, she cannot be liable for her negligent misrepresentation. Betancourt cites only *McCain v. Florida Power Corp.*, 593 So. 2d 500 (Fla. 1992), in support of her request for summary judgment on this claim. However, *McCain* was a personal injury action in which the plaintiff asserted a claim for negligence—not negligent misrepresentation—which is a different cause of action with different required

9

elements. Betancourt's motion for summary judgment is directed to the wrong tort, just as was her motion to dismiss the third-party complaint (D.E. 22).  Under Florida law, negligence is a separate and distinct tort from negligent misrepresentation—the latter being the claim actually asserted in State Farm's third-party complaint.

The foreseeability discussed and required by the Florida Supreme Court in *McCain* deals with the duty and proximate cause elements specific to a claim of negligence, not negligent misrepresentation. *McCain*, 593 So. 2d at 502.  Notwithstanding the inapplicability of *McCain* to the present dispute, Betancourt understood at the time she applied for a credit card that by providing a phone number to State Farm Bank, she was consenting to have, and would expect, State Farm Bank call her on that number if her account was past due.  (CSUMF ¶ 25; CSB ¶ 1)

To establish a claim for negligent misrepresentation a plaintiff must prove that: (1) the defendant made a misrepresentation of material fact, which she may have believed to be true, but which was in fact false; (2) the defendant was negligent in making the statement because she should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely and act on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.  *See Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004); *Florida Women's Med. Clinic, Inc. v. Sultan*, 656 So. 2d 931, 933 (Fla. 4th DCA 1995).  Betancourt does not argue that State Farm Bank cannot establish facts that would entitle it to recover on this claim.  And Betancourt admits that she understood at the time she applied for the credit card that, by providing a phone number to State Farm Bank, she was consenting to have, and would expect, State Farm Bank to call her on that number if her account was past due, and that State Farm Bank had the right to call her due to her outstanding debt. (CSUMF ¶ 25, 35; CSB ¶ 1)

Even if viewed as a traditional negligence claim, Betancourt's motion must be denied. In order to prevail on a cause of action for negligence under Florida law, the plaintiff must prove (1) the existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct for the protection of others, including the plaintiff; (2) a failure on the part of the defendant to perform the duty, and, (3) injury or damage to the plaintiff proximately caused by such failure. *See, e.g.*, *Vincent v. C.R. Bard, Inc.*, 944 So. 2d 1083, 1085 (Fla. 2d DCA 2006). Betancourt misrepresented to State Farm that 754-244-8626 was her number and the law recognizes a legal duty that a person not misrepresent facts to another a party in order to induce that party to act in reliance on that misrepresentation (as exemplified by the case law recognizing an action for negligent misrepresentation). Betancourt breached that duty and State Farm has been damaged as a result of relying on Betancourt's misrepresentation. (CSUMF ¶ 16, 19-20, 23, 37-40; CSB ¶ 3, 5, 6) Specifically, State Farm Bank was damaged by extending credit to Betancourt that she has refused to repay and then by attempting to contact her when her account went into default by calling her at 754-244-8626, the number she provided State Farm consent to call and represented as her own. (CSUMF ¶ 16, 19-20, 23, 37-40; CSB ¶ 3, 5, 6)

To the extent "foreseeability" enters the equation, Betancourt has not testified that she could not foresee that, by providing State Farm Bank with a number, State Farm Bank would attempt to call her on that number when her account went into default. Indeed, to the contrary, Betancourt has conceded that she understood State Farm Bank would, and had a right to, call her on the number she provided as her own when her account went into default. (CSUMF ¶ 25, 35; CSB ¶ 1) In any event, foreseeability is generally held to be an issue for the jury and that is certainly the case here.

Moreover, Betancourt also erroneously argues that *FCC Decl. Ruling 07–232* constituted "a change in the law" on express consent and, thus, she could not have foreseen in 2007 when

11

she provided 754-244-8626 to State Farm Bank that she was expressly consenting to calls to that number using an autodialer.  Betancourt's argument is wrong as a matter of fact and a matter of law.  As a factual matter, the FCC interpreted the express consent language in its original report and order adopting regulations under the TCPA in 1992 as applying to a situation where a person provides his or her number to another.  *1992 FCC TCPA Order* at **11.  As a legal matter, FCC rulings are interpretations of existing law.  In addition, the FCC's 2008 pronouncement was expressly stated as a mere clarification of its 1992 pronouncement.  *FCC Decl. Ruling 07–232* at **3 ("[b]ecause we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party, *we clarify* that such calls are permissible") (emphasis added).

Accordingly, Betancourt's motion for summary judgment on State Farm Bank's negligent misrepresentation claim should be denied.

### G.  The Parties' Contract Required Betancourt To Provide To State Farm Bank A Valid Telephone Number At Which She Could Be Contacted Regarding Her Account.

Betancourt claims that she did not breach the credit card agreement because the agreement did not include a written provision requiring her to warrant that the number she provided to State Farm Bank in association with her account was a number at which she could be lawfully called to discuss her account.  However, State Farm Bank will only consider a credit card application if the applicant provides a telephone number at which the applicant can be lawfully called concerning the account. (CSUMF ¶ 12; CSB ¶ 3) Once a credit card is issued, the customer is required to keep her contact information current, including providing a current telephone number at which the applicant can be called lawfully concerning the account.  (*See* CSUMF ¶ 12; CSB ¶ 1)

To the extent Betancourt argues that she did not breach her contractual obligation when she provided the number in question because it was in fact a valid number at which she could be contacted, Osorio and Betancourt cannot have it both ways.  Either the number in question was not exclusively Osorio's number and Osorio's claim fails as a matter of law, or Betancourt misrepresented the number as her own and breached her contract in doing so, making her liable for any fees and costs State Farm Bank has and will continue to incur in defending against Osorio's claim as well as any judgment Osorio might obtain against State Farm Bank.

### H. The Court Has Subject Matter Jurisdiction Over The Third Party Claims.

As she has admitted that she owes State Farm Bank $7,945.10 in addition to interest on this debt from May 26, 2011 (CSUMF ¶ 27, 36), Betancourt does not seek summary judgment on the merits of State Farm's breach of contract, open account and account stated claim to recover the debt she owes State Farm Bank.  Plaintiff only reargues that this Court is without jurisdiction to consider the claims.  This Court has rejected that argument twice, once in allowing State Farm Bank leave to file the third-party complaint and, again, in denying Betancourt's motion to dismiss the third-party complaint.

Betancourt once again argues that the total amount in controversy for the account stated and open account claims is $7,945.10—below the required $75,000 to vest the Court with diversity jurisdiction pursuant to 28 U.S.C. § 1332—and that the Court, therefore, lacks jurisdiction.  Although argued within her motion for summary judgment, Betancourt asks the court to dismiss the claims for lack of jurisdiction.  This Court should again reject Betancourt's arguments.

As State Farm Bank presented in its response in opposition to Betancourt's motion to dismiss [D.E. 23], "[t]he general rule is that a single plaintiff may aggregate the value of his claims against a defendant to meet the amount-in-controversy amount for diversity jurisdiction,

and the claims may be related or unrelated." *Petroleum Traders Corp. v. Hillsborough County*, No. 8:06-cv-2289-T-TBM, 2008 WL 4570318, at *4 (M.D. Fla. Oct. 14, 2008). Since "[the diversity statute] confers jurisdiction over 'civil actions' rather than specific claims alleged in a complaint, a plaintiff is permitted to aggregate claims in order to satisfy the amount in controversy requirement. *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 61-62 (2d Cir. 1999) (citing *Snyder v. Harris*, 394 U.S. 332, 335 (1969) (aggregation is permitted in cases in which a single plaintiff seeks to aggregate two or more claims against a single defendant)). "Aggregation is governed by Fed. R. Civ. P. 18, which allows joinder of any claims against a single defendant." *Id*. at 62.

State Farm first four counts in the third-party complaint—common law indemnification, contractual indemnification, breach of contract, and negligent misrepresentation—each seek damages in excess of $75,000, which is the minimum amount Osorio seeks in his complaint against State Farm. As the Court has already found, the causes of action for account stated and open account "are proper under Rule 18 of the Federal Rules of Civil Procedure, which provides '[a] party asserting a ... third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party.'" [D.E. 12 at p. 4] Accordingly, this Court has diversity jurisdiction over the causes of action for account stated and open account through the combination of Rule 18(a) and the doctrine of aggregation.

Betancourt also argues that the Court lacks supplemental jurisdiction pursuant to 28 U.S.C. § 1367, arguing that claims arising from Betancourt's debt to State Farm Bank are completely and totally unrelated to the proof of facts that State Farm Bank called Osorio's cellular number using an automated telephone dialing system without his consent. The Court already ruled on this issue in this case, finding that "State Farm's claims against Betancourt are based on Osorio's claim against State Farm." [D.E. 12]. The Court has further found that it

14

"has" supplemental jurisdiction over the claims alleged by State Farm Bank against Betancourt pursuant to 28 U.S.C. § 1367(a). In the order granting leave to file the third-party complaint, the Court quoted directing from 28 U.S.C. § 1367(a), noting that the statute states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

[D.E. 12 at p. 3]

Moreover, although such a showing is not required, these two additional claims arise out of the same controversy as Osorio's TCPA claim and the common law and contractual indemnification, breach of contract, and negligent misrepresentation claims, which seek recovery against Betancourt for all of any liability State Farm has to Osorio on his TCPA claim. The account stated and open account claims are simple. They establish Betancourt's liability for the amount due under the credit card account, the debt about which the calls complained of by Osorio were made.

Betancourt's argument that the Court lacks subject matter jurisdiction is plainly without merit. This Court should again reject the argument and deny Betancourt's motion for "summary judgment" on State Farm Bank's breach of contract, account stated and open account claims for recovery of the debt Betancourt admittedly owes State Farm Bank.

## **CONCLUSION**

For the foregoing reasons, State Farm Bank requests that the Court deny Betancourt's motion for summary judgment.

Dated: April 12, 2012

s/ *Paul L. Nettleton*
Paul L. Nettleton (396583)
E-mail: pnettleton@carltonfields.com
Aaron S. Weiss (48813)
E-mail: aweiss@carltonfields.com
Carlton Fields, P.A.
100 SE Second Street, Suite 4200
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

*Attorneys for Defendant/ Third-Party Plaintiff State Farm Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/* Paul L. Nettleton

## SERVICE LIST

Donald A. Yarbrough, Esq.
E-mail: donyarbrough@mindspring.com
P.O. Box 11842
Ft. Lauderdale, FL 33339
Tel: 954-537-2000
Fax: 954-566-2235
(Via CM/ECF)
*Attorney for Plaintiff Fredy D. Osorio and Third-Party Defendant Clara Betancourt*