UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 11-61880-Civ-Middlebrooks/Johnson

FREDY D. OSORIO,

      Plaintiff,

v.

STATE FARM BANK, F.S.B.,

      Defendant.

_____/

STATE FARM BANK, F.S.B.,

      Third-Party Plaintiff,

v.

CLARA BETANCOURT,

      Third-Party Defendant.

_____/

## **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S TCPA CLAIM**

Plaintiff, Fredy D. Osorio, files this Response in Opposition to Defendant's Motion for Summary Judgment on Plaintiff's TCPA Claim, and, in support thereof, states as follows:

1.      Defendant's motion contains many arguments about misrepresentations, and about Clara Betancourt ("Betancourt"), none of which have any bearing *at all* on Plaintiff's claim. Plaintiff received an outrageous number of telephone calls, 327 over just six months, through the use of an automatic telephone dialing system, to his cellular telephone, without his consent. Plaintiff's Statement of Additional Facts in Opposition to Defendant's Motion for Summary Judgment, "Plaintiff's Statement," filed contemporaneously in support of this response, ¶ 1-10. On the third of the 327 calls State Farm placed to Mr. Osorio, Mr. Osorio specifically informed State Farm that they were calling *his* telephone (as opposed to Ms.

Betancourt's), and thus, State Farm knew that its subsequent 324 calls were all being placed to Mr. Osorio's telephone. Plaintiff's Statement, ¶ 8. Plaintiff told Defendant to stop calling, and his plea was ignored. Plaintiff's Statement, ¶ 6. Defendant contends that Plaintiff seeks an unwarranted financial windfall, and insinuates that Plaintiff allowed his damages to accrue. Defendant is wrong. Plaintiff told Defendant after only *three* telephone calls to him that the number being called was *his* telephone. Plaintiff's Statement, ¶ 6-8. Certainly the amount of damages in question is large, however, as noted by United States District Judge Adalberto Jordan in granting summary judgment on the Telephone Consumer Protection Act ("TCPA") to a similarly situated plaintiff: "It may seem that, under the circumstances, an award of $78,500 [is] excessive. But my job is to apply the TCPA as Congress wrote it, not as it might have been written." Fillichio v M.R.S. Associates, Inc., 2010 U.S. Dist. LEXIS 112780 (S.D. Fla. 2010). Congress wrote into the TCPA a mandatory, minimum statutory damage award of $500.00 per violation. 47 U.S.C. §§ 227(b)(3)(B). Defendant and Defendant alone is responsible for placing 327 calls in violation of the statute, and the undisputed evidence shows that summary judgment should be entered for Plaintiff and against Defendant for the minimum statutory damages. Every argument made by Defendant in its motion is relative to whether or not the violations were willful or knowing, which is a question for the jury. On the third of the 327 calls State Farm placed to Mr. Osorio, Mr. Osorio specifically informed State Farm that they were calling *his* telephone (as opposed to Ms. Betancourt's), and thus there is evidence that Defendant's violations were willful or knowing, as discussed in more detail below. As to the minimum statutory damages, the evidence shows that Plaintiff, not Defendant, is entitled to judgment as a matter of law.

2.       Defendant attempts to muddy Plaintiff's claim with assertions that Plaintiff "shares" a home and a "family" cellular telephone service plan, and argues that Clara Betancourt is Plaintiff's common law wife, but does not assert the existence of a common law marriage as a fact, nor could it, because Mr. Osorio and Ms. Betancourt are *not* in a common law marriage. Mr. Osorio and Ms. Betancourt are not now, nor have they ever been married to each other. Plaintiff's Statement, ¶ 11.  Mr. Osorio rents a room from Ms. Betancourt in her home. Deposition of Plaintiff, "Plaintiff's Deposition," DE 39-1, page 39 line 21 to page 40 line 25. Plaintiff, and only Plaintiff, is the telephone subscriber for 754-244-8626 Plaintiff's Deposition, pages 28-30. Mr. Osorio has telephone service with MetroPCS. His service has three telephone numbers: his own, one that Ms. Betancourt uses, and one that their adult son uses. This telephone service is solely Mr. Osorio's service. It is *not* Ms. Betancourt's service. Mr. Osorio obtained this service as a cost-saving measure, and Ms. Betancourt is allowed to use one of the cellular numbers as her own, but she does *not* exercise any control whatsoever over Mr. Osorio's cellular phone number. She simply is using one of the cellular numbers that are on Mr. Osorio's account, but that does not mean that she has permission to use Mr. Osorio's separate telephone number. At their adult son's request, Mr. Osorio pays for a cellular telephone for Ms. Betancourt to use. Plaintiff's Deposition, page 30, lines 8-10. Mr. Osorio did not give Ms. Betancourt his consent to use *his* cellular telephone number. Plaintiff's Deposition, page 49 lines 10-12. Clara Betancourt's alleged provision of Plaintiff's cellular telephone number has no bearing on Defendant's liability to Plaintiff. Defendant placed 327 calls to Plaintiff's cellular telephone, without *Plaintiff's* prior express consent. Thus, Defendant's motion for summary judgment should be denied, and Plaintiff's motion for summary judgment should be granted.

3

## STATE FARM DID NOT HAVE PRIOR EXPRESS CONSENT TO CALL PLAINTIFF'S CELLULAR TELEPHONE NUMBER WITH AN AUTOMATIC TELEPHONE DIALING SYSTEM

3.      Defendant argues that it had prior express consent to call Betancourt at 754-244-8626, because Betancourt provided that number to State Farm Bank. Defendant is wrong. Betancourt is *not* the "called party" as that term is used in the statute, Plaintiff is, and *his* consent is what matters here. Even if it were the case that Betancourt's provision acted as consent, which it does not, that consent is not valid because any alleged consent was revoked when both Betancourt *and* Plaintiff told Defendant that the number belonged to Plaintiff and to stop calling it. On two separate occasions, Plaintiff told Defendant to stop calling his phone, and that it was a cell phone. Plaintiff's Deposition, page 43 line 9 to page 44 line 25, Plaintiff's Statement, ¶ 8. Furthermore, on September 29, 2010, *prior* to Defendant's placement of any of its 327 automated calls to Mr. Osorio's cellular number, Clara Betancourt told State Farm Bank, F.S.B., that the number they were calling, Fredy Osorio's cellular telephone number, was not her telephone number; she asked them to stop calling that number; and she informed them that she did not want them, going forward, to call that number for any reason at all. Betancourt Deposition, page 62 line 14 to page 65 line 6.

4.      Defendant attempts to liken the instant case to Gutierrez v. Barclays Group, 2011 WL 579238 (S.D. Cal. 2011) and contends that Betancourt had "common authority" over Osorio's cellular telephone number, so that she had the right to provide the number to other persons. While the wife in Gutierrez allowed her husband to use her phone number and give it out, those are not the facts of the instant case. There was no "common authority" over Osorio's telephone number. Betancourt *thought* she had Osorio's permission to use his number *only* as an emergency number, and for no other purpose. Betancourt Deposition, page 55. However, Mr.

4

Osorio never gave her any permission, *at all*, to use his cellular number in any way: "I didn't know that she was providing my number. I did not give my consent. She didn't ask me. I didn't know." Plaintiff's Deposition, page 49 lines 10-12. Plaintiff's Statement ¶ 12.

5. Defendant argues that the majority of decisions addressing the issue of revocation of consent have held that revocation of consent under the TCPA must be in writing. To support this proposition, Defendant cites to a handful of district court decisions, none of which were decided on similar facts, and none of which are binding on this Court. For example, in <u>Starkey v. Firstsource Advantage, LLC</u>, 2010 WL 2541756 (W.D.N.Y. Mar. 11, 2010), the court examined, not revocation of consent under the TCPA, but whether written notice is required to cease debt collection calls under the Fair Debt Collection Practices Act. In <u>Cunningham v. Credit Management, L.P.</u>, 2010 WL 3791104 (N.D. Tex. 2010), the plaintiff contended that his statement to defendant that collection calls were "inconvenient" was a revocation of consent, and the court reviewed the significance of that assertion. The facts and the holding in <u>Gutierrez</u>, on the other hand, are drastically more on point with the instant case. In <u>Gutierrez</u>, the Court noted the FCC's broad language in its Declaratory Ruling that prior express consent need *not* be in writing. The <u>Gutierrez</u> court reasoned that if consent may be oral, revocation may be oral as well:

> [T]he 1992 Report and Order strongly suggests that prior express consent need not be in writing…For instance, the 1992 Report and Order uses a credit application as an example of how a consumer may provide prior express consent for the use of their telephone number. In this case, Mr. Gutierrez filled out the account application on-line, but consumers are also free to apply for credit over the telephone. It seems highly unlikely that a creditor would assert that an on-line applicant gave prior express consent, but the telephone applicant did not. Applying this logic, *and absent language in the statute to the contrary*, this Court agrees with plaintiffs that prior express consent may be revoked orally and need not be in writing.

<u>Gutierrez v. Barclays Group</u>, 2011 WL 579238 (S.D. Cal. 2011) (emphasis added).

The FCC Order has absolutely no limitation whatsoever on the manner in which a consumer may transmit his or her cellular number to a creditor and thereby trigger consent for the placement of automated calls to that cellular number. Likewise, because there is no limitation on the way a consumer can communicate his or her cellular number to a creditor, there should be no limitation on the manner in which a consumer can revoke consent. The consumer can call the creditor on the telephone and provide a cellular number, and that would be consent. A consumer can visit the office of a creditor and tell the creditor his or her cellular number, and that would be consent. And so, it is not unreasonable that a consumer can revoke consent by any manner, whether written or oral. There is no language in the statute expressly requiring either written or oral consent. This Court should follow the rationale of <u>Gutierrez</u> and hold that both Betancourt's and Osorio's oral instructions acted as a revocation of any consent. As detailed below, even if the Court were to find that the revocation was invalid, there was no prior express consent in the first place, because Plaintiff did not provide his cellular telephone number to Defendant or authorize automated calls to his number.

## <u>PRIOR "EXPRESS" CONSENT WAS REQUIRED, AND DEFENDANT DID NOT HAVE CONSENT FROM MR. OSORIO</u>

6.     Because Plaintiff is *not* a debtor, he is entitled to the more stringent protection afforded non-debtors under the statute, as opposed to the relaxed standard applicable to debtors as established by the FCC Order regulating calls to cellular telephones. The TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–
>
> * * *

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. §§ 227(b)(1).

This statute makes it absolutely clear that prior express consent is required in order for autodialed calls to be exempted from the statute. It is undisputed that Mr. Osorio is not a debtor, and did not provide prior express consent to Defendant to place autodialed calls to his cellular telephone, and thus, Defendant has violated the statute. The FCC Order does relax the standard for prior express consent in the context of debt collection calls. Under that relaxed standard, if a person provides his or her cellular number to the original creditor, the mere provision of that number acts as a consent, and thus, the original creditor or its debt collector may make autodialed calls to the consumer's cellular telephone number. That relaxed standard, however, does not apply to Mr. Osorio because he is not a consumer, he is not a debtor, and he did not provide his cellular number in connection with the establishment of any debt.

## FREDY OSORIO IS THE "CALLED PARTY" BECAUSE HE IS THE OWNER OF THE TELEPHONE NUMBER DEFENDANT CALLED

The called party is the cellular telephone subscriber who owns the telephone number at the time the call is placed. That is the person whose privacy rights Congress intended to protect. In the instant case, Mr. Osorio received calls at *his own cellular telephone*. He did not accidentally pick up someone else's telephone and answer a call; these calls were made to *his* cellular telephone. United States District Judge Kenneth L. Ryskamp distinguished many of the same authorities that State Farm cites in support of its argument: Fostano v. Santander Consumer USA, Inc., Case No.: 10-80704-Civ-Ryskamp/Vitunac (S.D. Fla. October 19, 2011). In that case, the plaintiff, Fostano, received automated debt collection calls on his cellular telephone for J.C.,

who had apparently put Fostano's telephone number on her car loan application. In the court's

ruling on summary judgment, Judge Ryskamp distinguished Leyse v. Bank of America, N.A.,

2010 WL 2382400 (S.D.N.Y. June 14, 2010) and Cellco Partnership v. Dealers Warranty, LLC,

2010 WL 3946713 (D.N.J. October 5, 2010) in particular (two cases Defendant relies heavily

upon), holding that the "called party" was the telephone subscriber, not the intended recipient:

> While the Court acknowledges Leyse and Cellco's concern regarding undue
> broadening of TCPA standing requirements, the Court does not believe that this
> case creates such an issue. Fostano was not an "unintended and incidental
> recipient" of Santander's calls, he was the actual Telephone Number subscriber.
> A variety of cases have concluded that the "called party" under the TCPA is the
> individual who subscribes to the number to which the defendant places the call.
> Gutierrez v. Barclays Group, No. 10cv1012 DMS (BGS), 2011 WL 579238 (S.D.
> Cal. Feb. 9, 2011), involved a husband and wife with a joint credit card account.
> When the husband applied for the credit card, he offered two telephone numbers,
> claiming that one number was his home number and that the other number was his
> work number. Id. The number he said was his home number was actually his
> wife's cell phone number. Id. When the couple failed to make timely payments,
> the defendant began placing debt collection calls to both numbers. The couple
> brought suit under the TCPA, and the debt collector argued that the wife lacking
> standing because she was not a "called party." Id. The Court disagreed, holding
> that the wife had standing because she was the subscriber to the number the
> defendant was calling. Id. Similarly, in Tang v. William W. Siegel & Associates,
> 2011 WL 2356390 (N.D. Ill., June 14, 2011), the plaintiff received debt collection
> calls on his cell phone that were intended for someone else. The debt collector
> moved to dismiss, alleging that the plaintiff lacked standing because he was not
> the called party. The Court held that the plaintiff had standing, reasoning that the
> "called party" language in 47 U.S.C. § 227(b)(1)(A)(iii) arises in the context of an
> exemption and does not prescribe who may bring suit under the statute. See also
> Stuart v. AR Resources, Inc., Civil Action No. 10-3520, 2011 WL 904167 (E.D.
> Pa. Mar. 16, 2011) (holding that non-debtor who received debt collection calls on
> her cell phone had standing under the TCPA).
>
> This Court holds that the subscriber to the number in question is a "called party"
> with standing to sue under the TCPA. This conclusion is in accord with the
> TCPA's intent to protect both consumer privacy interests and to prevent undue
> cost-shifting to consumers, concerns that are implicated whether or not the
> telephone number subscriber is the debtor. Santander maintains that it had prior
> express consent to call the Telephone Number because J.C. provided the
> Telephone Number in the first place. The "called party," however, is Fostano, not
> J.C., and Fostano never provided his number to Santander. Santander did not have
> Fostano's consent to call Fostano's cell phone number.

<u>Fostano v. Santander Consumer USA, Inc.</u>, Case No.: 10-80704-Civ-Ryskamp/Vitunac (S.D. Fla. October 19, 2011).

United States District Judge Charles P. Kocoras also distinguished both <u>Leyse</u> and <u>Cellco</u>

in a decision cited by Judge Ryskamp in his ruling in <u>Fostano</u>:

> Even if the TCPA only affords a right of relief to the "called party," this Court finds that Plaintiff was the called party because Siegel intended to call Plaintiff's cellular telephone number and Plaintiff is the regular user and carrier of the phone.
>
> Siegel relies on two, non-binding cases in arguing that Plaintiff, the unintended recipient of the calls, is not the "called party" under the TCPA: <u>Leyse v. Bank of Am.,Nat'l Ass'n</u>, 2010 WL 2382400 (S.D.N.Y. June 14, 2010) and <u>Cellco P'ship v. Dealers Warranty, LLC</u>, 2010 WL 3946713 (D.N.J. Oct. 5, 2010). Neither case supports Siegel's argument. In <u>Leyse</u>, the defendant called an individual on their residential line and the individual's roommate answered. 2010 WL 2382400. The <u>Leyse</u> court held that the roommate, who sued the defendant, was not the called party and lacked standing. <u>Id</u>. The court reasoned that the roommate was an unintended and incidental recipient of the call since the defendant called the number actually associated with the individual it attempted to contact and the roommate merely happened to answer. <u>Id</u>. Aside from the fact that <u>Leyse</u> dealt with a different TCPA provision and evaluated the plaintiff's Article III standing, <u>Leyse</u> is distinguishable because Siegel did not call a number actually associated with Kimberly Nelson, the individual it was attempting to contact, but instead called Plaintiff's cellular number.
>
> Thus, unlike the roommate in <u>Leyse</u>, Plaintiff was not the unintended and incidental recipient of Siegel's calls. In <u>Cellco</u>, the other case cited by Siegel, the defendant placed unsolicited telemarketing calls to plaintiffs' subscribers. 2010 WL 3946713. An issue of statutory standing arose because the plaintiffs were telecommunications vendors and not the subscribers who actually received the phone calls. <u>Id</u>. Remarkably different from the plaintiffs in <u>Cellco</u> who did not receive the calls, here, Plaintiff actually received the calls from Siegel. Because Siegel intended to call Plaintiff's cellular phone number, Plaintiff received the calls, and Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a "called party" under the TCPA.

<u>Tang v. William W. Siegel & Associates, Attorneys at Law, LLC</u>, Case No: 1:11-cv-00599 (N.D. Ill. June 14, 2011).

Defendant argues that it intended to call Clara Betancourt, and therefore, it has no

liability to Mr. Osorio. The question is not whether or not Defendant intended to call Ms.

Betancourt or Mr. Osorio. The question is, whether or not Defendant intended to call a particular phone number – and that fact is not in dispute. Defendant intended to call a phone number which is Mr. Osorio's phone number. Thus, Mr. Osorio is the called party. Like the defendant trying to reach Kimberly Nelson in Tang, and the defendant trying to reach J.C. in Fostano, Defendant in the instant case intended to call Plaintiff's cellular telephone number, trying to reach Clara Betancourt, but Defendant *knew*, from the third of its 327 calls, that it was actually calling Mr. Osorio's telephone because he specifically told Defendant that. Plaintiff's Statement, ¶ 8. In the instant case as in Tang and Fostano, Plaintiff is the owner and regular user of the phone, and is the called party. Defendant tries to make the erroneous distinction between a telephone number that *it* associated with Clara Betancourt, and the actual owner of the telephone number, i.e. the person *actually* associated with the telephone number. Mr. Osorio, the owner and regular user of the phone, the person actually associated with the telephone number, and thus the called party, did *not* consent to Defendant's telephone calls.

7.     Defendant's argument that it did not *intend* to call Fredy Osorio, that it intended to call Clara Betancourt, is relevant *only* to whether or not the violations were willful or knowing. Congress anticipated the possibility that a business using autodialing technology might inadvertently dial the wrong number, and relieved the caller of willful or knowing liability if it can prove that the violation was unintentional, but did *not* relieve the caller of the strict liability attendant to the mere placement of a violative call. Thus Defendant's argument that it did not intend to call Plaintiff is irrelevant to the imposition of the minimum statutory damages. Defendant's interpretation of the law provides an impermissible result. Under Defendant's analysis of the TCPA, so long as some person gave consent, whether they own the telephone number or not, that consent is valid *regardless* of whose telephone number it is. This argument

results in a complete gutting of the protections of the statute. The statute is intended to protect the privacy of cellular telephones and under Defendant's argument, if a person gave out someone else's telephone number, Defendant would have the absolute right to place hundreds of autodialed calls to that cellular number regardless of whether or not the actual owner of the phone consented, and regardless of the owner of the phone having nothing to do with some other person's unpaid debts. Under Defendant's analysis of the TCPA, it could call *anyone*, as many times as it wanted to, day and night, and it would not violate the TCPA, so long as *someone* gave them the number. Defendant's scenario corrupts the purpose of the Act.

The case law cited by Defendant simply does not support Defendant's contention that Clara Betancourt is the "called party." In much of the case law cited by Defendant, it was *not* the telephone subscriber who sued under the act. In Leyse v. Bank of America, N.A., 2010 WL 2382400 (S.D.N.Y. June 14, 2010), Leyse was not the telephone subscriber at all, he was merely the roommate of the telephone subscriber, who accidentally picked up his roommate's telephone. The telephone subscriber, that is, the person who owned the telephone, was not even a party to the lawsuit. Defendant contends that it "associated" the Plaintiff's cellular telephone number with Betancourt, the way that the Defendant in Leyse associated the number with Leyse's roommate and not him. The two cases are not analogous. Of particular importance is the fact that Leyse concerned a residential telephone line, in the shared apartment of Leyse and his roommate. The court in Leyse was concerned with authorizing suits for persons who overhear messages not intended for them on answering machines. The instant case is wildly different, as are the provisions of the TCPA regulating cellular telephone calls. A cellular telephone is a personal, handheld mobile device, not an answering machine in an apartment. Leyse answered a telephone call to his roommate's residential line, that apparently, both roommates used. Mr. Osorio

received over three hundred messages to his personal cellular telephone, that only he used, and that no one else had permission to use. Plaintiff's Statement, ¶ 3,7. In Cellco Partnership v. Dealers Warranty, LLC, 2010 WL 3946713 (D.N.J. October 5, 2010), the plaintiffs were not telephone subscribers at all, but rather, the telecommunications vendors, suing on behalf of their subscribers, and thus were not the parties actually receiving the calls. Neither Leyse nor Cellco is analogous to the instant case, as Mr. Osorio is the telephone subscriber. In Kopff v. World Research Group, LLC, 568 F. Supp. 2d 39, 40-42 (D.D.C. 2008), a wife sued based upon a violative fax that was sent to her husband. Like the plaintiff in Leyse who answered a telephone that was not his, the plaintiff in Kopff retrieved a fax that was not hers, from a fax machine that was also, not hers. Neither case is at all analogous to the instant case.

8.     The Eleventh Circuit's unpublished decision in Meadows v. Franklin Collection service, Inc., 414 Fed. Appx. 230 (11th Cir. 2011) is similarly inapplicable to the instant case. In the Fostano case, Judge Ryskamp, in his Order Denying Defendant's Motion for Reconsideration (DE 95) of his Order imposing liability under similar circumstances, specifically noted that:

> The Court did not follow Meadows v. Franklin Collection service, Inc., 414 Fed. Appx. 230 (11th Cir. 2011) because Meadows deals with exemptions to the TCPA that apply exclusively to residential lines. See 47 C.F.R. § 64.1200(a)(2). Santander requested the Court to apply those exemptions to cellular lines, but the TCPA does not so allow. See 47 C.F.R. § 64.1200(a)(2).

Fostano v. Santander Consumer USA, Inc., Case No.: 10-80704-Civ-Ryskamp/Vitunac (S.D. Fla. November 1, 2011).

Meadows, like Leyse, concerned calls to a residential landline. The court in Meadows, to reach its decision, relied on the "established business relationship" exemption for residential calls found in the TCPA. 47 U.S.C. §§ 227(b)(2)(B). The exceptions for calls made to *cellular* telephones are much more stringent:

This exemption, however, applies only to residential telephone calls under section 227(b)(1)(B) — a provision not at issue here. In the instant case, Plaintiff alleges that Defendants contacted her via cell phone, placing her claim within the purview of 227(b)(1)(A)(iii). As noted above, the text of section 227(b)(1)(A)(iii) offers exemptions only for "a call made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). In a 2008 Declaratory Ruling, the FCC clarified that such express consent "is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for Clarification and Declaratory Ruling, 23 FCC Rcd. 559, 564-65 (2008). The FCC also reiterated the lack of other exceptions to section 227(b)(1)(A)(iii), recognizing that prerecorded calls could be particularly costly to cellular subscribers who pay for incoming calls. Id. at 562, 565 (citing Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14115(2003))

Stuart v. AR Res., Inc., 2011 U.S. Dist. LEXIS 27025, 16-17 (E.D. Pa. Mar. 15, 2011).

Defendant's efforts to construe a body of irrelevant case law – namely, a body of case law regarding calls to *landlines* telephone lines, does not change the plain fact that there are only *two* exemptions for calls placed to cellular telephones: that the call is for emergency purposes, or that the call was made with the prior express consent of the called party. Neither is the case here.

## DEFENDANT'S CASE LAW IS INAPPLICABLE TO THIS CASE

9.      Defendant cites numerous other cases to support its contentions, each of which is distinguishable from the instant case. In Cavero v. Franklin Collection Serv. Inc., Case No.: 11-22630-Civ-Altonaga (S.D. Fla. Jan. 31, 2012), the plaintiff himself, Cavero, provided his own cellular telephone number on the relevant application. In Starkey v. Firstsource Advantage, LLC, 2010 WL 2541756 (W.D.N.Y. Mar. 11, 2010), the plaintiff, *who was the debtor and the telephone subscriber* provided her telephone number when she activated cable service, and the Starkey ruling turned on revocation of consent, not the provision of the number. Likewise, in Moise v. Credit Control Servs., Inc., Case No.: 11-60026-Civ-Seitz (S.D. Fla. October 18, 2011), the issue of consent turned on whether the plaintiff, w*ho was the debtor and telephone*

*subscriber*, provided his telephone number to the original creditor. In <u>Cunningham v. Credit Management, L.P.</u>, 2010 WL 3791104 (N.D. Tex. 2010), plaintiff, the *debtor and telephone subscriber*, provided his cellular telephone number in connection with his internet service account. The same facts, but with a cable service provider, are present in <u>Moore v. Firstsource Advantage, LLC</u>, 2011 WL 4345703 (W.D.N.Y. September 15, 2011) – the *debtor* provided her own cellular telephone number to the original creditor. The same facts are present in <u>Moltz v. Firstsource Advantage, LLC</u>. In the instant case, Plaintiff is *not* a consumer, is not a debtor, and has no relationship whatsoever with Defendant. Plaintiff's Statement, ¶ 9. Plaintiff is the telephone subscriber, and *not* the person who provided the number. This distinguishes the instant case from the aforementioned cases, in which the debtor himself/herself provided their own telephone number, and not someone else's.

<b><u>"CHARGED FOR THE CALL"</u></b>

10.     Defendant argues that because Mr. Osorio was not specifically charged airtime for its 327 calls to his cellular number, that it has no liability to him. Defendant is wrong, because the statute prohibits calls to any cellular number, *or* any service for which the called party is charged for the call. Mr. Osorio's telephone number is undisputedly a cellular telephone number, and thus, whether or not he was charged airtime for Defendant's 327 calls to that number is irrelevant to a determination of liability. The TCPA does *not* require that a party be charged per call for each call to be actionable under the Act. The TCPA provides:

> (b) Restrictions on use of automated telephone equipment.
> (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. § 227(b) (in relevant part).

The Act further provides:

(2) Regulations; exemptions and other provisions. The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission--

(C) may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect;

47 U.S.C. § 227(b)(2)(C).

Defendant has not cited *a single case* in which a TCPA claim was dismissed on the basis that a person was not charged per call. In fact, the only authority Defendant cites for this proposition is an FCC Order from 1992, which *pre-dates* Congress's later amendment to the TCPA at 47 U.S.C. § 227(b)(2)(C). This exact dynamic was analyzed in Abbas v. Selling Source, LLC, 2009 U.S. Dist. LEXIS 116697 (N.D. Ill. Dec. 14, 2009):

Selling Source claims that a 1992 FCC Report and Order suggests that the TCPA requires a called party to be charged for a violation to occur. See In the Matter of Rules and Regulations Implementing the Telephone Consumers Protection Act of 1991, Report and Order, 7 F.C.C.R. 8752, 8775 (Oct. 16, 1992) (the "1992 Order"). In the 1992 Order, the FCC stated, "Based on the plain language of § 227(b)(1)(iii), we conclude that the TCPA did not intend to prohibit autodialer or prerecorded message calls to cellular customers for which the called party is not charged." Id. Not two weeks later, however, Congress amended the TCPA to provide that the FCC "may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party." See Pub. L. No. 102-556, 106 Stat. 4181, 4194-95 (Oct. 28, 1992), enacted as 47 U.S.C. § 227(b)(2)(C). If uncharged calls were already exempted from the requirements of the TCPA, as the FCC's 1992 Order and Selling Source maintain, the later congressional amendment would be wholly superfluous, as no FCC "rule or order" would be necessary to exempt such calls from the statute's purview. Courts

15

avoid such ineffective statutory construction. See In the Matter of Merchants Grain, Inc., 93 F.3d 1347, 1353-54 (7th Cir. 1996).

Selling Source argues that the congressional amendment was technical and should be given no substantive effect. The amendment was indeed technical. See Pub. L. No. 102-556, 106 Stat. at 4194-95. But "a statute is a statute, whatever its label," and "the usual tools of statutory construction" should be used in interpreting a technical amendment. See United States v. R.L.C., 503 U.S. 291, 305 n.5, 112 S. Ct. 1329, 117 L. Ed. 2d 559 (1992); see also Mudge v. United States, 308 F.3d 1220, 1229 (Fed. Cir. 2002). Employing one of those tools--reading statutes as a whole--*the court finds that the TCPA does not require that a party called via a number assigned to a cellular telephone service must be charged for the call to make that call actionable.*

Finally, while Selling Source argues that congressional intent indicates that Congress was primarily concerned with cost-shifting (and that consequently the TCPA should not apply to calls not charged to the called party), Congress was just as concerned with consumers' privacy rights and the nuisances of telemarketing. See Bonime v. Avaya, 547 F.3d 497, 499 (2d Cir. 2008) ("Congress's stated purpose in enacting the TCPA was to protect the privacy interests of residential telephone subscribers . . . ."); see also Section II.E.1 infra. *Automated calls invade privacy and pose nuisances regardless of whether the called party is charged for the call, and so congressional intent is furthered by the TCPA's application to both charged and uncharged calls.*

Abbas v. Selling Source, LLC, 2009 U.S. Dist. LEXIS 116697 (N.D. Ill. Dec. 14, 2009) (emphasis added).

See also:

The TCPA does not require plaintiff to allege that he was charged for individual collection calls to state a claim. See, e.g., Lozano v. Twentieth Century Fox Film Corp., No. 09 C 6344, 702 F. Supp. 2d 999, 2010 U.S. Dist. LEXIS 27447, 2010 WL 1197884, at *9 (N.D. Ill. Mar. 23, 2010) ("[T]he plain language of the TCPA does not require plaintiff to allege that he was charged for the relevant call at issue in order to state a claim pursuant to [section 227 of the TCPA]."); Abbas v. Selling Source, LLC, No. 09 C 3413, 2009 U.S. Dist. LEXIS 116697, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) (same).

Mitchem v. Ill. Collection Serv., 2010 U.S. Dist. LEXIS 76581 (N.D. Ill. July 29, 2010).

Defendant contends that because Plaintiff's cellular phone was in his son's name, Plaintiff was not the called party "charged for the call" and therefore lacks standing to bring a claim under the TCPA. The Court disagrees. Plaintiff testified that he is the one that pays for his cellular telephone even though the cellular telephone is in his son's name. (Rivas Deposition, D.E. 53-2 at 18-20.) As such,

the Court finds that Plaintiff was the one being charged for calls to his cellular phone and thus he has standing to assert a claim against Defendant for violations of the TCPA.

Manuel E. Rivas v. Receivables Performance Management, LLC, 2009 U.S. Dist. LEXIS 129378, Case No.: 08-61312-Civ-Lenard/Garber (S.D. Fla, September 1, 2009).

The TCPA provides that it shall be unlawful to make any call using any automatic telephone dialing system or an artificial or prerecorded voice to: "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call" (47 U.S.C. § 227(b)(1)(A)(iii)). Defendant would like to construct the statute to mean that to have a cause of action under the TCPA; a person must be charged per call on their pager, cellular telephone, mobile radio, or other radio carrier. The sentence "or any service for which the called party is charged for the call" is not a modifier to the previous sentences, it is the fifth item in a list of services: it is unlawful to call, using an automatic telephone dialing system or pre-recorded voice, 1) a cell phone, 2) a pager, 3) a mobile radio, 4) any other radio carrier service, or 5) any other service not listed for which a person is charged. The Lozano court adopted this rationale in its 2010 decision. If the statute really meant that you must *always* be charged for a violation to occur, then there would be no need for the exception that the FCC "may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party" (47 U.S.C. § 227(b)(2)(C)).

The FCC, by rule or order, may exempt calls to cellular telephone that are not charged to the called party. But the FCC has not made such an exemption. The statute's grant of authority to the Commission to make future exemptions does not grant *any* body the permission to make such an exemption. This is not a matter for the individual analysis of any given district court – it is for

the FCC and only for the FCC to decide to make such an exemption. Just because the FCC found

that calls to cellular telephone numbers for which the consumer is charged "inappropriately shifts

costs to consumers," does *not* automatically mean that calls to cellular numbers for which the

consumer is *not* charged are permissible. Defendant takes unwarranted liberties with statutory

construction and interpretation, and cites nothing whatsoever to back up this contention.

### STATE FARM IS LIABLE TO PLAINTIFF FOR FMS'S PLACEMENT OF THE CALLS, BECAUSE THEY WERE MADE AT STATE FARM'S DIRECTION AND FMS REPRESENTED ITSELF AS STATE FARM WHEN PLACING CALLS TO PLAINTIFF

11.     Defendant contends that because it did not "make" the calls at issue, it cannot be

held liable under the TCPA. However, State Farm allowed or required FMS, Inc. to represent

itself as State Farm in the telephone calls it placed to Mr. Osorio, and FMS *did* represent itself as

State Farm Bank. Plaintiff's Statement ¶ 2. When it suited State Farm's purposes, it allowed or

required FMS to claim that it *was* State Farm, but now when State Farm is called to account for

its actions, it claims that it did not actually make the calls. The calls were made at State Farm's

specific request, and the callers represented themselves as State Farm, and under the FCC Order,

the calls are treated as if they were made by State Farm itself, as explained below. This is not

exactly an unanticipated outcome for the banking arm of one of America's largest insurers to

become acquainted with liability as a result of allowing some other party to impersonate it and

take actions prohibited by law.

12.     Defendant also contends that the FCC's Declaratory Ruling impermissibly adds

the language "on behalf of" to the statute, and that the Court should not defer to the FCC's

ruling. Defendant is wrong. The FCC did not "add language" to the statute in interpreting the

meaning of prior express consent, nor did it "add language" to the statute in determining that

debt collection calls are exempt from the TCPA's provisions regarding telephone solicitations.

Likewise, the FCC did not "add language" to the statute when it determined that the original creditor is liable for the violative actions of its third party agent who actually places the debt collection calls. The Hobbs Act, 28 U.S.C. § 2342, gives the federal courts of appeal the exclusive jurisdiction to set aside or determine the validity of final orders of the FCC. Defendant asks this Court to make a finding that portions of the FCC Order exceed the authority Congress granted to the FCC, and to review the validity of FCC's Order. Only the courts of appeal may determine whether the FCC's interpretation of the statute exceeds its regulatory authority. As such, Defendant is liable to Plaintiff under the explicit provisions of the FCC Order:

> A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules.  Calls placed by a third party collector on behalf of that creditor *are treated as if the creditor itself placed the call*.

FCC, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07-232, ¶10 (2007) (emphasis added).

## DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO TREBLE DAMAGES OR INJUNCTIVE RELIEF

13.     Defendant contends that there is no evidence of willful or knowing violations of the statute, and that as such, the Court should enter summary judgment for Defendant, foreclosing this issue. Defendant is wrong. State Farm knew from the third of its 327 calls that it placed to Mr. Osorio's cellular telephone that the number actually was Mr. Osorio's phone, because Mr. Osorio specifically told State Farm. Both Plaintiff and Betancourt also specifically told State Farm not to call Mr. Osorio's cellular telephone number. On two separate occasions, Mr. Osorio told State Farm to stop calling his phone, and that it was a cell phone. Plaintiff's Deposition, page 43 line 9 to page 44 line 25, Plaintiff's Statement, ¶ 8. On September 29, 2010, *prior* to Defendant's placement of any of its 327 automated calls to Mr. Osorio's cellular

number, Clara Betancourt told State Farm that the number they were calling, Fredy Osorio's cellular telephone number, was not her telephone number; she asked them to stop calling that number; and she informed them that she did not want them, going forward, to call that number for any reason at all. Betancourt Deposition, page 62 line 14 to page 65 line 6. As there is a factual issue in this regard, Plaintiff's willful and knowing damages are better left to the jury. As to injunctive relief, Defendant contends that there have been no collection calls regarding Betancourt's account since May 31, 2011. However, Defendant also represents in its motion that it is still the owner of Betancourt's outstanding debt. Thus, Defendant's representation that it will not call Plaintiff again, particularly in light of the fact that Defendant still owns Betancourt's debt and still retains an interest in collecting it, presents a factual dispute as to whether Plaintiff's interest in monetary damages completely prevails over other concerns. Considering that Defendant placed over three hundred automated calls to Plaintiff's cellular telephone, Plaintiff has a definite interest in enjoining Defendant from placing any further calls to his cellular telephone number, and the necessity of such an injunction is a fact-based determination, best left for the jury.

14.     This is a simple case. No matter how the Defendant twists the evidence or attempts to vilify Ms. Betancourt, nothing changes the simple fact that State Farm placed 327 calls to Mr. Osorio's cellular telephone number without his consent. Defendant did not have express consent or any consent from Mr. Osorio to call his cellular telephone number with an automatic telephone dialing system. Defendant is liable to Plaintiff for the minimum statutory damages, and Defendant's motion for summary judgment should be denied.

Respectfully submitted,

DONALD A. YARBROUGH, ESQ.
Attorney for Plaintiff
Post Office Box 11842
Fort Lauderdale, Florida 33339
Telephone: (954) 537-2000
Facsimile: (954) 566-2235
donyarbrough@mindspring.com

s/Donald A. Yarbrough
Donald A. Yarbrough, Esq.
Florida Bar No. 0158658

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 11-61880-Civ-Middlebrooks/Johnson

FREDY D. OSORIO,

      Plaintiff,

v.

STATE FARM BANK, F.S.B.,

      Defendant.
_____/

STATE FARM BANK, F.S.B.,

      Third-Party Plaintiff,

v.

CLARA BETANCOURT,

      Third-Party Defendant.
_____/

### <u>CERTIFICATE OF SERVICE</u>

    **I HEREBY CERTIFY** that on <u>April 20, 2012</u>, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                             <u>s/Donald A. Yarbrough</u>
                             Donald A. Yarbrough, Esq.

22

## SERVICE LIST

Mr. Paul L. Nettleton, Esq.
Carlton Fields, P.A.
Suite 4200, Miami Tower
100 SE Second Street
Miami, FL 33131
Telephone: 305-530-0050
Facsimile: 305-530-0055

Via Notices of Electronic Filing generated by CM/ECF